IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81621-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID M. PUTMAN, | ) | PUBLISHED OPINION |
| | ) | (IN PART) |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — In Matter of Lui,[1] our Supreme Court explained that a police officer can testify about statements made in an interrogation, including statements commenting on a witness's credibility, if the testimony provides context for the interrogation.

David Putman was convicted on three counts of first degree child rape, one count of first degree child molestation, and one count of second degree child molestation, all for crimes committed against his daughter, A.P. Putman argues retrial is required because the trial court admitted a recording and transcript of his police interrogation during which officers asked him whether A.P. was lying about his predations. The jury heard these questions only as part of the interrogation itself and for the clear purpose of understanding the contradictory statements

---

[1] 188 Wn.2d 525, 555, 397 P.3d 90 (2017).

Putman made during the interrogation.  The court did not abuse its discretion by admitting the evidence.

Putman also contends retrial is required because the court declined a pretrial subpoena request under CrR 4.7(d).  Because the request is properly evaluated under CrR 4.7(e) and he fails to show the court abused the discretion conferred by that rule, retrial is not required.

However, resentencing is required for all convictions because the court miscalculated Putman's sentencing score and applied the incorrect version of the Sentencing Reform Act (SRA), chapter 9.94A RCW.

In the unpublished portion of this opinion, we address Putman's contention that retrial is required because the court concluded ER 410 did not prohibit him from being impeached with statements he made to a sexual deviancy evaluator during plea negotiations.  Because he fails to demonstrate prejudice from the court's decision, retrial is not required.  We also address Putman's numerous alleged errors in his statement of additional grounds.  None warrant relief.

Therefore, we affirm Putman's convictions, reverse his sentence, and remand for resentencing in accord with this opinion.

## FACTS

In the fall of 2016, Putman and his then-wife Julie[2] were having frequent, serious arguments about their finances, and he raised the possibility of ending

---

[2] Except for David Putman and A.P., we refer to members of the Putman family by their first names for clarity.  Julie and Putman are no longer married.

their marriage. Their son Patrick spoke with his then 23-year-old younger sister A.P. about hiring a marriage counselor. A.P. explained she had no interest in saving the marriage because her father had sexually assaulted her for years. She revealed that Putman regularly molested and raped her. Many rapes occurred in Putman's home office.

Over the coming weeks, A.P. disclosed Putman's predations to her cousin Michael Griffith and to her other siblings. On October 28, they told Julie what Putman had done. Julie was shocked. After Putman came home later that night, they confronted him with A.P.'s accusations. When accused of molesting A.P. for "her whole childhood," he responded, "I'm sorry."[3] Putman admitted he remembered one incident of oral sex.

At Julie's insistence, Putman moved out of their house. He sent a series of text messages to Julie taking the blame and admitting he molested A.P. Putman went to live with his sister, Beverly Mullbock. Putman admitted to Mullbock that he had molested A.P. for many years.

A.P. and her mother went to the Maple Valley police station, and A.P. reported what her father had done. A few days later, Putman turned himself in to the police, and he was interviewed at the station by Detectives Marylisa Priebe-Olson and John Hawkins. He was initially charged with three counts of first degree child rape. The State eventually charged him with three counts of first degree child rape and one count of first degree child molestation, allegedly

---

[3] Report of Proceedings (RP) (Feb. 11, 2020) at 945.

3

committed between April 1993 and April 2005, and one count of second degree child molestation, allegedly committed between April 1993 and April 2007.

Putman's first defense counsel, Justin Wolfe, represented him through the initial stages of discovery and plea negotiations. As part of plea negotiations, Putman agreed to a sexual deviancy evaluation, and Wolfe, after consulting Putman, agreed the evaluation could be used for impeachment at trial if Putman testified. The State and A.P. opposed any sentencing alternative, and the parties did not reach a plea agreement.

In March of 2019, Putman discharged Wolfe and retained defense attorney Peter Geisness. The court granted a seven-month continuance to let Geisness prepare for trial and complete the trials already on his schedule. As part of Geisness's trial preparation, he asked the State for new photos of the home office in Julie's house where A.P. alleged most of the rapes occurred. The State disclosed the 2016 police investigation photos of the office to Putman, and it conveyed the request to Julie. She provided new photos.

A few weeks before trial, defense counsel moved under CrR 4.7 for a subpoena requiring that Julie let defense counsel and a defense investigator take additional photos in her home. The court found the existing photos sufficient to let Putman argue his defense and denied the request. The court also held a CrR 3.5 hearing to determine the admissibility of Putman's police interview. Putman moved to redact an exchange with Detective Priebe-Olson asking Putman whether

he believed A.P. was lying. The court denied the motion and admitted the interview.

During trial, A.P., Julie, Patrick, Griffith, and Mullbock testified. They each recounted Putman's admissions, and A.P. testified in detail about Putman's numerous rapes and molestations throughout her childhood. The detectives who interviewed A.P. and Putman testified as well, and the State played the police interview. After the State rested, Putman moved under ER 410 to prevent the State from impeaching him based upon his statements to the sexual deviancy evaluator. The court denied the motion, and Putman chose to not testify. The jury found Putman guilty on all charges.

The court calculated Putman's offender score to include two simultaneous convictions from 1981 as separate points. It relied solely on the 2005 version of the SRA at sentencing.

Putman appeals.

## ANALYSIS

I. Police Interrogation Opinion Testimony

We review a decision to admit a police officer's statements from an interrogation for abuse of discretion.[4] Putman contends the court abused its discretion by admitting improper opinion testimony through portions of a police interview where detectives asked Putman if A.P. was lying. The State argues the

---

[4] State v. Notaro, 161 Wn. App. 654, 661, 255 P.3d 774 (2011) (citing State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001) (plurality opinion)).

detectives' questions were not opinion testimony because they were made during an interrogation.[5]

Lui controls this analysis. In Lui, the defendant alleged defense counsel was ineffective for, among other reasons, failing to object when two detectives testified they believed he had lied during police interviews.[6] Citing the lead opinion from State v. Demery,[7] the Lui court explained that while "[p]olice officers are generally not permitted to testify about a defendant's veracity," officers can "repeat statements made during an interrogation accusing a defendant of lying if such testimony provides context for the interrogation."[8]

In Lui, two detectives testified. The court reasoned that one detective's testimony did not opine about the defendant's honesty because it referred to inconsistencies between earlier interviews and the police file, explaining the reason for her interview.[9] Thus, there was no reason for defense counsel to object. The other detective's testimony was objectionable, however, because she implied a belief that the defendant was guilty.[10] But the court concluded defense

---

[5] The State argues this issue was not preserved for review in its entirety because Putman objected to admitting only one of the two statements he now argues are improper. But because Putman objected to one of the two statements, RP (Feb. 4, 2020) at 319, we will consider the merits of this issue regardless of its scope. Thus, for the sake of judicial economy and to decide this on its merits, RAP 1.2(a), we reject the State's preservation argument.

[6] Lui, 188 Wn.2d at 555.

[7] 144 Wn.2d 753, 30 P.3d 1278 (2001).

[8] Lui, 188 Wn.2d at 555 (citing Demery, 144 Wn.2d at 753, 763-64).

[9] Id. at 555-56.

[10] Id. at 556.

counsel was not deficient for failing to object to the second detective's testimony because the absence of an objection was reasonable.[11]

Putman argues the Lui court misapplied the context of the interview rule from Demery, explaining it was supported by only a plurality of the Demery court, and the concurrence sided with the dissent against it.[12] Putman's position is unavailing. Although Demery was a split decision with a four-justice plurality opinion and a lone concurrence, the Lui court merely construed the plurality and concurring opinions as adopting the context of the interview rule. This is a reasonable position and accords with the presumption against overruling precedent sub silentio.[13] Putman can disagree with the Lui court's construction of Demery, but we are bound by it.[14]

Putman argues we should not follow Lui because its application of the context of the interview rule was dicta.[15] "'Statements in a case that do not relate

---

[11] Id.

[12] Wash. Court of Appeals oral argument, State v. Putman, No. 81621-7-I (Jan. 19, 2022), at 5 min., 1 sec. through 5 min., 57 sec., http://www.tvw.org/watch/ ?clientID=9375922947&eventID=2022011100&startStreamAt=301&stopStream At=357.

[13] See State v. Johnson, 188 Wn.2d 742, 756, 399 P.3d 507 (2017) ("We therefore 'do not lightly set aside precedent.'") (quoting State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008)); see also State v. Studd, 137 Wn.2d 533, 548, 973 P.2d 1049 (1999) ("We will not overrule such binding precedent sub silentio.").

[14] State v. Rogers, 17 Wn. App. 2d 466, 476, 487 P.3d 177 (2021) (citing State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984); State v. Mandefero, 14 Wn. App. 2d 825, 837, 473 P.3d 1239 (2020)).

[15] Wash. Court of Appeals oral argument, State v. Putman, No. 81621-7-I (Jan. 19, 2022), at 3 min., 16 sec., through 4 min., 40 sec., http://www.tvw.org/

to an issue before the court and are unnecessary to decide the case constitute obiter dictum, and need not be followed.'"[16]  The Lui court was considering whether defense counsel should have objected, requiring analysis of whether each detective's testimony was objectionable.  Adopting the context of the interview rule was essential to decide the issue before it.  The analysis in Lui was not dicta.

Here, the State played an approximately one-hour interview that two detectives conducted with Putman.  The jury heard them ask Putman twice whether A.P. was lying.  The issue is whether the officers' questions about A.P. lying were improper opinion testimony when the jury heard them only within the interrogation itself.  The result depends on a detailed review of the interview.

At the outset of the interview, Putman admitted to the officers that he sexually abused A.P., that he molested her both in his bed and while on a camping trip, and that he abused her for purposes of sexual arousal.  A.P. had already told the detectives that she typically performed oral sex on Putman in his office and that he performed oral sex on her once.

| | |
|---|---|
| Det. Priebe-Olson: | Okay.  [D]id anything ever happen in your office? |
| Putman: | I don't remember anything happening in the office. |

---

watch/?clientID=9375922947&eventID=2022011100&startStreamAt=196&stop
StreamAt=280.

[16] Johnson v. Liquor & Cannabis Bd., 197 Wn.2d 605, 618, 486 P.3d 125 (2021) (internal quotation marks omitted) (quoting In re Pers. Restraint of Domingo, 155 Wn.2d 356, 366, 119 P.3d 816 (2005)).

Det. Priebe-Olson: Okay. [A.P.] had a very vivid memory of the office and being under that desk, she said, a lot.

Putman: I don't recall that.

Det. Priebe-Olson: You obviously know what she is referring to, right, when she would say that?

Putman: I heard her say that, . . . but I don't recall that.

Det. Priebe-Olson: You don't recall it?

Putman: No.

Det. Priebe-Olson: And how did you manage to block this out?

Putman: What do you mean?

Det. Priebe-Olson: I mean, she has, obviously, a lot more memory and recall at a young age, where you were the adult and was actually aware of what was going on.

Putman: That's why I say that she seems to remember things that I don't remember.

Det. Priebe-Olson: Or is it just hard to talk about or are you worried about talking about—

Putman: No.

Det. Priebe-Olson: Which is reasonable.

Putman: No. I think I [indiscernible] myself fully on this.

Det. Priebe-Olson: Do you think?

Putman: Yes, I think so.

Det. Priebe-Olson: So, did you perform oral sex on your daughter?

Putman: Um . . . no.

Det. Priebe-Olson: <u>So she is lying when she says that happened</u>?

Putman: Did she say that that happened?

Det. Priebe-Olson: Yes. . . . I mean, you said that you are here trying to do the right thing and hoping for a relationship with your family and your kids, . . . but the only way they feel like they can maybe have a good relationship in the future is for you to do the right thing, you know, stand up, take responsibility, apologize . . . . I'm sure you, as a parent, told them that they need to be honest, tell the truth, and then apologize for the behaviors and it won't happen again. . . .

Putman: Right.

Det. Priebe-Olson: And I think this is a good opportunity to prove that you are willing to do that, if you are.

Putman: I think by me coming in here and talking to you and waiving my rights and saying what I, a lot of the things I have said, I think I have proven that.

Det. Priebe-Olson: I don't think [A.P.] is going to agree with you, I can tell you that. . . . She expects you to be bluntly honest, just like she was, and truly apologize—

Putman: I truly apologized to her.

Det. Priebe-Olson: To apologize and be forgiven, don't you actually have to be truthful about everything that happened?

Putman: Yes.

Det. Priebe-Olson: Okay. And I don't think she feels like—that you are doing that. And it doesn't appear to me at this time—

Putman:        I have been very honest with my daughter.[17]

Later, the detectives began asking about Putman performing oral sex on A.P.:

Det. Hawkins:    Okay. How did it—how would the, like, the normal, um, like, routine happen? Was it more of the same, like cuddling and hugs, and that's what got you aroused? Or did it just happen?

Putman:    Honestly, I don't remember. Like I said, I just blocked it out of my mind, and I really don't remember. You are talking about something that was 11 or 12 years ago.

Det. Hawkins:    Yeah.

Putman:    And if you [are] asking me to go back 18 years, um, I can't remember that.

Det. Hawkins:    Any father that would do that to a kid would remember doing that.

Putman:    [M]aybe so. Maybe you think so, but I honestly don't have memories of that.

Det. Hawkins:    Okay.

Putman:    I have blocked that out.

Det. Hawkins:    Okay. Again, I'm not trying to be—I'm just trying to help understand this whole thing, okay? With that same logic, since you blocked it out, could you have, um, had oral sex with [A.P.] then, and just not remember?

Putman:    I don't think so.

Det. Hawkins:    Okay.

Putman:    But, I don't know.

Det. Hawkins:    Okay.

---

[17] RP (Feb. 13, 2020) at 1247-52 (emphasis added).

| | |
|---|---|
| Putman: | I don't think so. |
| Det. Priebe-Olson: | <u>Let's put it this way: would [A.P.] lie about it?</u> |
| Putman: | She might not, might not remember it correctly. |
| Det. Priebe-Olson: | Well, what else would she—why would you say that? |
| Putman: | I don't know. |
| Det. Priebe-Olson: | She remembers it pretty clearly; I can tell you that.  Because she was—this happened for years, right?  She has many memories and they are now memories that she is having to deal with. |
| Putman: | I just honestly don't remember doing that to her. |
| Det. Priebe-Olson: | Okay.  <u>But would you call her a liar, or would you just say you don't remember?</u> |
| Putman: | <u>I'm not calling her a liar, no.</u> |
| Det. Priebe-Olson: | Okay. |
| Putman: | But I'm not sure she remembers that clearly.[18] |

Both officers testified, although neither testified about those particular questions nor made similar statements in the presence of the jury.

Putman argues those questions were improper opinion testimony, requiring retrial.  But the jury heard those questions only within the limited context of Putman's interrogation.  And because jurors heard the majority of the interview, they understood the officers asked about A.P. lying to understand Putman's contradictory statements and the differences between Putman and A.P.'s

---

[18] RP (Feb. 13, 2020) at 1287-88 (emphasis added).

accounts. Because an officer is allowed to give direct testimony repeating statements accusing a witness of lying if it "provides context for the interrogation,"[19] the questions were not opinion testimony.[20]

II. Denied Subpoena

We review a trial court's management of discovery for abuse of discretion.[21] A trial court abuses its discretion when its decision is based on an untenable evidentiary or legal basis.[22]

Putman argues the court abused its discretion by denying his discovery request under CrR 4.7(d) for a subpoena compelling Julie to let his attorney take additional photos in and around his former office in her house. The State contends CrR 4.7(d) did not apply because it already complied successfully with his discovery request.

---

[19] Lui, 188 Wn.2d at 555 (citing Demery, 144 Wn.2d at 763-64).

[20] See State v. Kirkman, 159 Wn.2d 918, 931, 155 P.3d 125 (2007) (concluding a police officer did not give opinion testimony when relating a child sex abuse victim's interview comments about telling the truth because the officer "'merely provided the necessary context'" to let the jury assess credibility) (quoting Demery, 144 Wn.2d at 764). The Demery plurality noted that "when the trial court admits third party statements to provide context to a defendant's responses, the trial court should give a limiting instruction to the jury, explaining that only the defendant's responses, and not the third party's statements, should be considered as evidence." 144 Wn.2d at 761-62. Although the court here did not give such an instruction, as in Demery, "such a limiting instruction was not required in this case because the jury clearly understood from the officer's testimony that the statements were offered solely to provide context to the defendant's relevant responses." Id. at 762.

[21] State v. Youde, 174 Wn. App. 873, 884, 301 P.3d 479 (2013) (citing State v. Yates, 111 Wn.2d 793, 798, 765 P.2d 291 (1988)).

[22] State v. Finch, 181 Wn. App. 387, 395, 326 P.3d 148 (2014) (citing State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

CrR 4.7(d) requires that "[u]pon defendant's request and designation of [discoverable] material or information in the knowledge, possession or control of other persons . . . the prosecuting attorney shall attempt to cause such material or information to be made available to the defendant." But the rule requires a court to issue a subpoena, subject to CrR 4.8, only "[w]here the prosecutor's efforts to obtain discoverable material held by others are unsuccessful."[23]

Putman wanted photos of the various sightlines into and out from his former home office to support his theory that the office's openness meant it was too visible from too many places for him to have frequently abused A.P. in the office without anyone's notice. During the initial police investigation in 2016, the King County Sheriff's Office took almost a dozen photographs of the office, and the State disclosed them. In November of 2019, Putman asked the State for new, additional photos of the office, and the State conveyed his request to Julie.[24] Julie took and provided at least seven new photos of the office.

In February of 2020, the court considered Putman's subpoena request and examined the two sets of photos already disclosed. It found that both sets showed the openness Putman sought to demonstrate. The court also noted that Julie's redecoration and rearrangement of the office between 2016 and 2019 meant it

---

[23] State v. Blackwell, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993) (citing CrR 4.7(d)).

[24] Putman posits that the State did not assist with this request, but defense counsel told the court "I initially went through the State" when reaching out to Julie to request photos, RP (Feb. 3, 2020) at 59.

"looks very different . . . almost like it is not the same room from both."[25]  Additional photographs, at best, would have provided the same information.  Although Putman asserts the State's efforts were unsuccessful because Julie did not provide another round of photographs or permit a defense investigator into her home on the eve of trial, he fails to address the State's previous efforts that successfully produced two different sets of photos adequately showing the openness of the office.  Because the prosecutor successfully "attempt[ed] to cause such material or information to be made available to the defendant," CrR 4.7(d) no longer applied.[26]

CrR 4.7(e) applies when a defendant "'requests disclosure beyond what the prosecutor is required to disclose'" under CrR 4.7(a), (c), or (d).[27]  Because Putman sought information not governed by those subsections, CrR 4.7(e) applied.[28]  CrR 4.7(e)(1) gives the court discretion to issue a subpoena or a discovery order.

In State v. Norby, our Supreme Court analyzed CrR 4.7(e) to decide whether a trial court abused its discretion by issuing a discovery order requiring the compilation and disclosure of a voluminous quantity of statistics.[29]  A

[25] RP (Feb. 3, 2020) at 60.

[26] Blackwell, 120 Wn.2d at 826-27 (citing CrR 4.7(d)).

[27] City of Seattle v. Lange, 18 Wn. App. 2d 139, 150, 491 P.3d 156 (emphasis omitted) (quoting Blackwell, 120 Wn.2d at 828), review denied, 198 Wn.2d 1024 (2021).

[28] Finch, 181 Wn. App. at 396.

[29] 122 Wn.2d 258, 262, 858 P.2d 210 (1993).

15

defendant allegedly committed drug crimes in 1988 and, due to budgetary and staffing issues, was not charged until 1990.[30]  The defendant filed a motion to dismiss due to the two-year gap in charging and served interrogatories on the State to discover detailed information about budget, staffing, and many charging decisions.[31]  The State resisted disclosure, and the trial court granted the defendant's motion to compel production.[32]

The Supreme Court reversed, concluding the discovery requests were not material under CrR 4.7(e)(1).[33]  First, information about investigative and charging policies was not material because "the State has already provided it."[34]  Second, the majority of the request was not necessary to demonstrate a due process violation for that particular defendant, making it unrelated to his innocence or guilt.[35]

Here, the State argues that Putman sought discovery that would have been "cumulative of existing evidence."[36]  As in Norby, additional photos of the office would have been duplicative of previous disclosures and had little probative value due to the office being completely redecorated and rearranged.  Under these

---

[30] Id. at 261.

[31] Id. at 262.

[32] Id.

[33] Id. at 267-68.

[34] Id. at 267 n.3.

[35] Id. at 267.

[36] Resp't's Br. at 25.

circumstances, Putman fails to show the trial court abused the discretion conferred by CrR 4.7(e)(1).[37]

III. Sentencing

Whether a trial court exceeds its sentencing authority is a question of law we review de novo.[38] We also review calculation of an offender score de novo.[39]

Putman argues resentencing is required on counts 1 through 3, first degree rape of a child, and on count 4, first degree child molestation, because the trial court miscalculated his offender score and exceeded its sentencing authority by failing to apply the versions of the SRA in effect when he committed his offenses. He also argues resentencing is required on count 5, second degree child molestation, because his offender score was calculated incorrectly. The State largely concedes these issues, and we accept its concessions.[40]

---

[37] Although the court appeared to rely upon CrR 4.8(b)(2) to deny the subpoena by noting "good cause" did not exist to issue it, RP (Feb. 3, 2020) at 60; see CrR 4.8(b)(2) (requiring that a subpoena for inspection of premises issue only after "good cause is shown"), we can affirm on any basis supported by the record. State v. Arndt, 194 Wn.2d 784, 799, 453 P.3d 696 (2019) (citing LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

[38] State v. Church, 5 Wn. App. 2d 577, 580, 428 P.3d 150 (2018) (citing State v. Button, 184 Wn. App. 442, 446, 339 P.3d 182 (2014)).

[39] State v. Griepsma, 17 Wn. App. 2d 606, 619, 490 P.3d 239 (citing State v. Moeurn, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010)), review denied, 198 Wn.2d 1016, 495 P.3d 844 (2021).

[40] In summary, as conceded by the State, resentencing is required to recalculate Putman's offender score, the duration of his sentences for the rape convictions and first degree molestation conviction, the duration of community custody, and the duration of the sexual assault protection order based upon the corrected sentences. It is also required to set Putman's early release rate at 15 percent for the three rape convictions and the first degree molestation conviction.

The parties agree that the court should not have applied the 2005 version of the SRA, but they disagree about which version of the SRA should apply when resentencing counts 1 through 4.

The law in effect at the time a criminal offense is committed controls disposition of the case.[41] Where the jury is presented with multiple acts of the same criminal conduct occurring over many years and is not asked to identify which act is the basis of a conviction, the State creates a risk that the court could sentence the defendant using an inapplicable version of the SRA.[42] Thus, the lesser of the two possible sentences must be imposed when "the evidence presented at trial indicates the crime was committed before the increase went into effect."[43] Application of the incorrect version of the SRA at sentencing violates the defendant's due process rights.[44]

During closing argument, the prosecutor identified six specific acts, any of which "could" be used for counts 1 through 4, and made clear that the selection of any single act excluded its use for any other charge.[45] The State argues the prosecutor elected six specific acts of rape that the jury used to convict Putman,

---

Finally, resentencing is required to strike the random urinalysis community custody condition because it is not crime-related.

[41] State v. Schmidt, 143 Wn.2d 658, 674, 23 P.3d 462 (2001).

[42] State v. Parker, 132 Wn.2d 182, 185-188, 937 P.2d 575 (1997).

[43] In re Pers. Restraint of Hartzell, 108 Wn. App. 934, 945, 33 P.3d 1096 (2001) (citing id. at 191-92).

[44] State v. Aho, 137 Wn.2d 736, 744, 975 P.2d 512 (1999).

[45] RP (Feb. 18, 2020) at 1380-83.

so the trial court should choose the four oldest of the elected acts and resentence him based upon them.

Our Supreme Court addressed a similar situation in <u>State v. Parker</u>.[46]  A boyfriend was charged with two counts of first degree child molestation and one count of first degree child rape for sexually assaulting his girlfriend's children.[47]  The charging document stated he committed the offenses from 1987 through 1991.[48]  In 1991, the legislature amended the SRA to increase the standard sentencing range for both offenses.[49]  The evidence at trial demonstrated he had sexually assaulted the children throughout the charging period.[50]  During closing arguments, the prosecutor told the jury it could convict based upon any of the assaults alleged during the charging period.[51]  The jury was not asked to find when the crimes occurred, and the jury was properly instructed about reaching a unanimous verdict as to each act.[52]  It found the boyfriend guilty of one count of first degree child molestation and one count of first degree rape.[53]  The trial court

---

[46] 132 Wn.2d 182, 937 P.2d 575 (1997).

[47] <u>Id.</u> at 185.

[48] <u>Id.</u>

[49] <u>Id.</u>

[50] <u>Id.</u>

[51] <u>Id.</u>

[52] <u>Id.</u> & n.2.

[53] <u>Id.</u>

used the 1991 version of the SRA to calculate the boyfriend's sentence for both convictions.[54]

The Supreme Court reversed the sentence.[55] Because the jury was allowed to convict the boyfriend based upon any of the acts committed during the charging period, sentencing the boyfriend using the 1991 version of the SRA relieved the State of its burden of proving when he assaulted the children.[56] "Use of the increased penalties without requiring the State to prove the acts occurred after the effective dates of the increased penalties would violate" the boyfriend's due process rights.[57]

Here, even if the prosecutor successfully elected six specific acts to guard against a nonuanimous verdict,[58] it still risked a due process violation. As the State acknowledges, the trial court was left to decide which specific act was the basis for the conviction on each specific count for two different crimes. This risked

---

[54] Id. at 185-86.

[55] Id. at 184.

[56] Id. at 191 & n.12.

[57] Id. at 191. Although the Parker court actually concluded using the 1991 SRA would violate the ex post facto clause, his due process rights were prejudiced. See Aho, 137 Wn.2d at 742-43 (explaining the ex post facto clause applies only to the legislative branch, so retroactive application of a punitive law by a court is actually a due process violation).

[58] The jury was given a unanimity instruction, and Putman does not allege he was found guilty by nonunanimous verdict.

retroactive application of the incorrect sentencing scheme and risked depriving Putman of the opportunity to have a jury decide when he committed his crimes.[59]

The trial court sentenced Putman using only the version of the SRA in effect in 2005, but the convictions at issue were alleged to have occurred between April of 1993 and April of 2005. The SRA was amended repeatedly during the charging period.[60]

As in Parker, the evidence from trial demonstrated Putman committed his crimes throughout the charging period. And, like Parker, the jury was not asked to find when the crimes occurred or to identify which acts were used as the basis for its findings of guilt. This created uncertainty that could have been, but was not, avoided with a special verdict form.[61] In this setting, the factfinder should determine when the crimes used for conviction occurred if the State is to avoid the risk of a due process violation. Because the jury did not find when each crime was committed, due process requires that he be resentenced for the crimes committed when the least punitive versions of the SRA were in effect.[62]

The parties agree the earliest sexual assault could have occurred in April of 1996 before the June 1996 SRA amendments took effect. Because that is the

---

[59] See Parker, 132 Wn.2d at 192 n.14 ("[W]hen the crime was committed is a factual question which must be put to the jury.").

[60] E.g., LAWS OF 2001, 2d Spec. Sess., ch. 12, § 303 (allowing for the imposition of a lifetime term of community custody for the crimes of first degree rape of a child and first degree child molestation); LAWS OF 1997, ch. 340, § 1 (increasing the seriousness level for first degree rape of a child).

[61] It is possible other solutions could resolve or avoid this problem.

[62] Parker, 132 Wn.2d at 191.

earliest assault, Putman admitted to the police he assaulted A.P. about once per week,[63] and A.P. testified that Putman's assaults were "sporadic" but occurred "at least 100 times,"[64] the record supports resentencing on all three rape convictions and on the first degree molestation convictions based upon the version of the SRA in effect before the June 1996 amendments took effect.

The remainder of this opinion has no precedential value. It will be filed for public record in accordance with the rules governing unpublished opinions. In the unpublished portion of this opinion, we consider both Putman's argument that an evidentiary error under ER 410 requires reversal and the additional grounds Putman argues require reversal. Neither warrant relief.

Therefore, we affirm Putman's conviction, reverse his sentence, and remand for resentencing.

## IV. Use of Sexual Deviancy Evaluation for Impeachment under ER 410

Putman contends the court prejudiced his right to present a defense when it ruled ER 410 did not prevent him from being impeached with statements he made to a sexual deviancy evaluator for the purpose of plea negotiations. The State relies upon the Federal Rules of Evidence to argue that Putman waived the protections of ER 410 and that, even if the court erred, he was not prejudiced. When a defendant alleges an evidentiary decision prejudiced their right to present

---

[63] RP (Feb. 13, 2020) at 1262.

[64] RP (Feb. 12, 2020) at 1105.

a defense, we review the evidentiary decision for abuse of discretion and, if the court erred, review the alleged constitutional violation de novo.[65]

ER 410(a) provides, in relevant part, "evidence of . . . statements made in connection with, and relevant to, any . . . pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer." No Washington court has decided whether ER 410 can be waived. We need not decide this issue because, even assuming the court erred, Putman fails to demonstrate prejudice.

Relief is not warranted unless the defendant was prejudiced by the erroneous admission.[66] The erroneous admission of evidence under ER 410 was "'not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'"[67]

Putman argues the error prejudiced his right to present a defense by causing him to not testify, although he does not argue the error actually precluded him from testifying.

---

[65] Arndt, 194 Wn.2d at 797-98 (citing State v. Clark, 187 Wn.2d 641, 648-56, 389 P.3d 462 (2017)).

[66] City of Seattle v. Pearson, 192 Wn. App. 802, 817, 369 P.3d 194 (2016) (citing State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

[67] State v. Garcia, 179 Wn.2d 828, 848, 318 P.3d 266 (2014) (quoting Bourgeois, 133 Wn.2d at 403); see State v. Korum, 157 Wn.2d 614, 647, 141 P.3d 13 (2006) (in dicta, applying the same rule to conclude prejudice did not result from erroneous admission of evidence under ER 410) (quoting Bourgeois, 133 Wn.2d at 403).

Every criminal defendant has the fundamental right to testify in his own defense.[68] A defendant can also make a knowing, intelligent, and voluntary waiver of this right.[69] Only the defendant can decide whether to testify, and this decision cannot be taken away by counsel or the court.[70] But relief from an erroneous decision to admit evidence is unwarranted in absence of prejudice,[71] and Putman fails to show how an evidentiary error that left him free to testify deprived him of the right to testify.

In a colloquy with the court, Putman personally explained he made his "final decision" against testifying because he could be impeached with the contents of the sexual deviancy evaluation and feared "that the jury would believe the [evaluator] over me."[72] But the risks of impeachment and credibility determinations exist for every witness.[73] And here, the State could have aggressively cross-examined and effectively impeached Putman's denials regardless of the court's decision by using, for example, his admissions to Julie and the police. Putman sent text messages to Julie confessing he molested A.P.

---

[68] State v. Lee, 12 Wn. App. 2d 378, 387, 460 P.3d 701 (citing State v. Robinson, 138 Wn.2d 753, 758, 982 P.2d 590 (1999), review denied, 195 Wn.2d 1032, 468 P.3d 622 (2020).

[69] Robinson, 138 Wn.2d at 758-59 (citing State v. Thomas, 128 Wn.2d 553, 558-59, 910 P.2d 475 (1996)).

[70] Id. at 758 (citing Thomas, 128 Wn.2d at 558).

[71] Pearson, 192 Wn. App. at 817 (citing Bourgeois, 133 Wn.2d at 403).

[72] RP (Feb. 18, 2020) at 1340-41.

[73] ER 607.

and "horribly allowed myself to take advantage of my own child's love."[74]  He confessed to the police that he "groomed"[75] A.P. and made her perform oral sex on him.  Even if the trial court erred by concluding he waived ER 410 and by admitting his sexual deviancy evaluation if he testified, he fails to establish this ruling impacted his right to testify.  Facing inevitable and devastating impeachment unrelated to ER 410, Putman made a knowing, voluntary, intelligent, and strategic waiver of his right to testify.  The court did not prejudice this right.  Because Putman does not show a reasonable probability that the court's decision impacted the outcome of his trial, he fails to establish prejudice.[76]

V. Statement of Additional Grounds

In his statement of additional grounds, Putman identifies fifteen issues, which can be consolidated into eight analyses.

We "'will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors.'"[77]  We are "'not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review.'"[78]  We are not obligated to review an alleged error in a statement of additional grounds when it relies upon

---

[74] RP (Feb. 11, 2020) at 970.

[75] RP (Feb. 13, 2020) at 1263.  "Grooming" has been defined as "a process by which child molesters gradually introduce their victims to more and more explicit sexual conduct."  State v. Quigg, 72 Wn. App. 828, 833, 866 P.2d 655 (1994).

[76] Garcia, 179 Wn.2d at 848 (quoting Bourgeois, 133 Wn.2d at 403).

[77] Griepsma, 17 Wn. App. 2d at 623 (quoting RAP 10.10(c)).

[78] Id. (quoting RAP 10.10(c)).

facts outside the appellate record.[79]  And we need not consider issues that are "repetitive of briefing."[80]

First, Putman asserts he received ineffective assistance of counsel from both his first and second defense counsels, Wolfe and Geisness, respectively.  We review claims of ineffective assistance of counsel de novo as a mixed question of law and fact.[81]  To succeed, Putman must show defense counsel's representation fell below an objective standard of reasonableness and prejudiced him.[82]  Defense counsel's performance fell below an objective standard of reasonableness if "there was no legitimate strategic or tactical reason for counsel's action."[83]

Putman argues Wolfe provided deficient representation by failing to consult adequately with him, by failing to provide discovery, and by agreeing to the State's terms regarding the sexual deviancy evaluation.  Putman provides no evidence to support his assertions that Wolfe failed to meet with him or that Wolfe's use of time lacked any legitimate, reasonable purpose.  The limited evidence in the appellate record shows that Wolfe provided Putman with all discovery in his possession

---

[79] See State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013) ("[I]ssues that involve facts or evidence not in the record are properly raised through a personal restraint petition.") (citing State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008)).

[80] Id. (citing RAP 10.10(a)).

[81] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009) (citing In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001)).

[82] Id. (citing State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

[83] Id. at 883-84 (citing McFarland, 127 Wn.2d at 335).

while representing him. And Wolfe's agreement to the terms of the sexual deviancy evaluation was a reasonable tactical decision made while plea bargaining with the State because his client wanted a special sex offender sentencing alternative (SSOSA).[84] Putman fails to show Wolfe provided deficient representation.[85]

Putman argues Geisness provided deficient representation and lists 21 reasons why his performance was deficient. This list is not sufficiently developed factually or legally to allow for adequate review, and, to an extent, it relies on facts outside the appellate record. Thus, we decline to address it.[86]

Second, Putman contends the prosecutor committed misconduct by violating the discovery rules, by not recusing herself, and by filing additional charges in retaliation against him. To succeed, he must prove the prosecutor's conduct was both improper and prejudicial.[87] We decline to consider the discovery contention because it relies upon factual assertions not in the appellate record.[88]

---

[84] This conclusion is not a comment on whether the protections of ER 410 can be waived.

[85] Even if Wolfe's performance was deficient, Putman fails to explain how these deficiencies prejudiced the outcome of trial when Geisness replaced Wolfe almost one year before trial, and when, as discussed above, Putman fails to show prejudice from the court's ER 410 decision.

[86] Griepsma, 17 Wn. App. 2d at 623 (quoting RAP 10.10(c)); Calvin, 176 Wn. App. at 26 (citing Alvarado, 164 Wn.2d at 569).

[87] State v. Luvene, 127 Wn.2d 690, 701, 903 P.2d 960 (1995) (citing State v. Mak, 105 Wn.2d 692, 726, 718 P.2d 407 (1986)).

[88] Calvin, 176 Wn. App. at 26 (citing Alvarado, 164 Wn.2d at 569).

The recusal contention is unpersuasive because he fails to show a prosecutor has a duty to recuse herself if she previously worked with the judge.

"'Prosecutorial vindictiveness is [the] intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right.'"[89]  The prosecutor's action must be "designed to penalize a defendant" for invoking his rights.[90]  Putman does not identify which assertion of a procedural right prompted the decision to file additional charges, and we need not search the record for one.[91]  To the extent Putman argues the prosecutor was vindictive because the additional charges made him ineligible for a SSOSA, it is not persuasive.  A SSOSA is not a procedural right to which a defendant is entitled.[92]  Because Putman does not provide evidence of actual or presumptive vindictiveness, this contention fails.

Third, Putman argues judicial misconduct requires retrial.  He identifies a particular exchange and asserts the court "improperly assisted" the prosecutor.[93]  But the record shows the court merely overruled defense counsel's objection and explained the basis for its ruling.  He also asserts the judge was biased because

---

[89] State v. Lee, 69 Wn. App. 31, 35, 847 P.2d 25 (1993) (alteration in original) (quoting State v. McKenzie, 31 Wn. App. 450, 452, 642 P.2d 760 (1981)).

[90] Korum, 157 Wn.2d at 627 (citing United States v. Meyer, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

[91] Griepsma, 17 Wn. App. 2d at 623 (quoting RAP 10.10(c)).

[92] See RCW 9.94A.670(3), (4) (factors for a court to weigh when considering request for a SSOSA).

[93] Statement of Additional Grounds (SAG) at 5.

she had supervised the prosecuting attorney for about five months in 2016. But when the judge raised this fact and asked whether the parties had any concerns or objections, defense counsel said he and Putman had spoken about it, "are comfortable," and did not have "any reason" to ask for recusal.[94] Putman waived this issue.

Fourth, Putman asserts retrial is required due to juror bias. Putman's argument relies almost entirely on factual assertions either unsupported by or not present in the appellate record. To the extent his assertions have a possible basis in the record, they are not adequately developed to allow review. Thus, we decline to review this issue.

Fifth, Putman contends the trial court abused its discretion by admitting an unredacted photo of his groin and pelvis. He appears to contend ER 402 and ER 403 barred admission of the photo, arguing it was "without relevance" and "inflammatory."[95] We review evidentiary decisions for abuse of discretion.[96]

Putman made the appearance of his penis part of his defense and asked Julie and A.P. about it, thereby making the photo relevant.[97] Relevant evidence can be excluded under ER 403, however, when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

---

[94] RP (Jan. 30, 2020) at 25.

[95] SAG at 5.

[96] State v. Bedada, 13 Wn. App. 2d 185, 194, 463 P.3d 125 (2020).

[97] See ER 401 (evidence is relevant when it has "any tendency" to make the existence of a consequential fact more or less probable).

misleading the jury." A court considers the whole case when weighing the risk of unfair prejudice, including "'the importance of the fact of consequence for which the evidence is offered in the context of the litigation, . . . the availability of alternative means of proof, [and] whether the fact of consequence for which the evidence is offered is being disputed.'"[98]

Here, the trial court initially excluded the unredacted photo, concluding it was more inflammatory than probative because the parties agreed to stipulate that Putman was circumcised. It reversed itself, however, after defense counsel used A.P.'s uncertainty about the appearance of Putman's penis to undermine her credibility. Because defense counsel's questions were designed to undermine A.P.'s credibility by making her appear unsure about whether Putman was circumcised, the appearance of Putman's penis became more probative of A.P.'s credibility, a central issue at trial not covered by the stipulation. The trial court did not abuse its discretion by concluding defense counsel made the unredacted photo more probative than prejudicial under ER 403.[99]

Sixth, Putman argues the court abused its discretion by limiting the scope of his cross-examination. He contends the court erred by not permitting questions to A.P. and Patrick about getting in trouble as teenagers for sending and receiving sexual text messages.

---

[98] Bedada, 13 Wn. App. 2d at 193-94 (quoting State v. Kendrick, 47 Wn. App. 620, 628, 736 P.2d 1079 (1987)).

[99] Id. Even if the trial court abused its discretion, Putman fails to explain how the decision was prejudicial.

Putman wanted to introduce the messages to show A.P.'s poor relationship with him to provide an alternate motive for her disclosures and to give context to Patrick's description of Putman becoming more of a friend as he got older. The court concluded A.P. could be asked about receiving an "inappropriate" text message and the subsequent confrontation she had with Putman, although it did not allow exploration of the message's content. The court concluded Patrick could be asked about Putman not punishing him for his receipt of inappropriate text messages as a teenager, but the court excluded the sexual content of the messages because it was not relevant. Because Putman was allowed to explore the topics he now insists he was not and fails to explain why the text messages' sexual contents were relevant, he fails to show the court abused its discretion.

Putman also argues the court should have allowed cross-examination of A.P.'s cousin Griffith about possibly possessing a firearm at the family's confrontation of Putman. Defense counsel argued the fact was "relevant because in the eventuality—if my client testifies, it could go to state of mind in terms of how some of his answers to the family took place if one of the people there was in possession of the firearm and if he knew about it."[100] The court concluded the evidence "would be misleading and confusing and just not relevant" during the State's case-in-chief, but it ruled Putman could "certainly bring it up in your case if that's how you wish to proceed."[101] Putman declined to testify or present a case

---

[100] RP (Feb. 6, 2020) at 599.

[101] Id. at 603.

31

after the State rested.  Because Putman does not explain why the firearm evidence was relevant absent his testimony, he fails to show the court abused its discretion.  And because he declined to present a case, he fails to show prejudice.

Seventh, Putman appears to argue the court erred by concluding his police interview was admissible because his mental state at the time of the interview meant his Fifth Amendment waiver was not truly voluntary.  The trial court held a CrR 3.5 hearing about the police interview, entered findings of fact, and concluded the interview was admissible.  Putman does not challenge these findings of fact, making them verities on appeal.[102]

The question is whether, based upon these findings and the surrounding circumstances, "a confession was coerced by any express or implied promise or by the exertion of any improper influence."[103]  To determine whether the police exerted improper influence, a court considers the "'crucial'" element of police coercion, the length of the interrogation, the defendant's maturity, the defendant's mental health and physical condition, and whether the defendant received the proper warnings about his constitutional rights.[104]

---

[102] State v. Rafay, 168 Wn. App. 734, 757, 285 P.3d 83 (2012) (quoting State v. Broadaway, 113 Wn.2d 118, 129, 942 P.2d 363 (1997)).

[103] State v. Unga, 165 Wn.2d 95, 101, 196 P.3d 645 (2008) (citing Arizona v. Fulminante, 499 U.S. 279, 285, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); Broadaway, 113 Wn.2d at 118)).

[104] Id. (quoting Withrow v. Williams, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993)).

The court found that Putman knew he was under arrest and was provided Miranda[105] warnings at the outset of the interview,[106] that Putman understood he was waiving his rights and intended to do so, that he "did not exhibit any signs of or indications of medical or physical distress[,] did not appear to be in any acute emotional or physical distress and did not indicate he was suffering from any suicidal thoughts or ideas during his interview," that "neither detective made threats or promises of any kind," and that Putman never asked to speak with a lawyer or stop the interview.[107] Additionally, Putman was 58 years old, had chosen to turn himself in, and was interviewed for a relatively short time immediately after turning himself in. The trial court did not err.

Eighth, Putman argues retrial is required because of the court's redaction ruling about his police interview and because of its ER 410 ruling. Because these issues are "repetitive of briefing," we decline to address them anew.[108]

VI. Cumulative Error

Putman contends retrial is required due to cumulative error.

"'The cumulative error doctrine applies where a combination of trial errors denies

---

[105] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[106] Because Putman was given Miranda warnings before he confessed, his argument about a two-stage interrogation, SAG at 11, is unpersuasive. See Missouri v. Seibert, 542 U.S. 600, 604, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004) (explaining a two-stage interrogation occurs when an officer obtains a confession before providing Miranda warnings, provides them, and then uses the first confession to obtain a second confession).

[107] Clerk's Papers at 108-110.

[108] Calvin, 176 Wn. App. at 26 (citing RAP 10.10(a)).

the accused a fair trial.'"[109]  Because Putman demonstrates, at most, a single potential error about ER 410, the cumulative error doctrine does not apply.[110]

Therefore, we affirm Putman's conviction, reverse his sentence, and remand for resentencing.

_____

WE CONCUR:

_____   _____
Appelwick, J.                      Dwyer, J.

---

[109] Lui, 188 Wn.2d at 564-65 (quoting In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014)).

[110] See State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000) ("The application of that doctrine is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.").