# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Appellant,<br><br>　　　v.<br><br>MICHAEL J. ROGERS,<br><br>　　　　　　Respondent. | DIVISION ONE<br><br>No. 80404-9-I<br><br>PUBLISHED OPINION |

DWYER, J. — The State appeals from a sentence imposed upon a juvenile, Michael Rogers, following his conviction in superior court of murder in the first degree. The State contends that the 106 month sentence imposed upon Rogers was too lenient and was, therefore, unlawful. Rogers responds that when youth is established as a mitigating factor and the sentencing court has imposed an exceptional sentence below the standard range, the length of the sentence cannot be questioned on appeal.

Because the Eighth Amendment to the United States Constitution and article I, section 14 of our state constitution require that superior court judges possess broad discretion when sentencing juveniles who have been convicted in adult court, we conclude that the exceptional sentence provisions of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, are no longer applicable once a judge has determined that youth has been established as a mitigating circumstance. However, recognizing that standardless and

unreviewable sentencing could both allow arbitrary and biased decision-making and run afoul of our state constitution's guarantee of a defendant's right to an appeal, such decisions must be capable of being entertained on appellate review. Accordingly, we review the sentencing court's decision as we would review a sentence imposed prior to the effective date of the SRA. Applying such a standard, we affirm.

I

On February 13, 2016, 14-year old Diante Pellum and 16-year-old Michael Rogers planned to rob marijuana from 16-year-old Wesley Gennings when Gennings met up with them to sell them marijuana. Several weeks earlier, Rogers had attended a New Year's Eve party at Gennings' home and had seen a realistic looking BB gun in Gennings' bedroom. This left Rogers with the impression that Gennings carried a gun. At some point on the evening of February 13, Michael Stewart, Pellum's cousin, and Stewart's girlfriend, Stephanie Blanc, dropped Rogers and Pellum off at Pellum's house.

Later that evening, Janelle Massingill heard a gunshot coming from a parked car in the parking lot of a Taco Bell. Massingill saw Rogers leave the front seat of the car and Pellum leave the back seat.[1] Rogers opened the driver's door, looked inside the vehicle, and shut the door. To Massingill, Rogers appeared "shocked" and "panicked." Pellum appeared nonchalant. The two teenagers walked away from the car.

---

[1] Massingill testified to seeing two young African-American individuals leave the car, a taller person from the front seat and a shorter person from the back seat. Rogers was, at the time, five inches taller than Pellum. The State obtained a conviction on the theory that Rogers was the taller person whereas Pellum was the shorter person.

Massingill called the police, who discovered Gennings' body slumped over in the front seat of the car. The cause of death was a gunshot wound to the back right side of his head. Pellum's fingerprint was found on the car seat headrest post.

Shortly after Gennings was shot, Stewart received a telephone call. Blanc and Stewart drove to pick up Pellum and Rogers from an apartment building near the Taco Bell. As they passed the Taco Bell, Rogers expressed that he would have liked to have removed Gennings' car, but that he did not know how to drive a stick-shift vehicle. Rogers instructed Blanc to drive to a body of water. Blanc drove to Fisher's Pond, and Rogers got out of the car and crossed the street toward the pond. After he returned to the car, Blanc drove Rogers and Pellum to Pellum's home. Neither Gennings' cell phone nor the murder weapon were ever found.

Rogers and Pellum were each charged with murder in the first degree predicated on robbery.[2] Pellum and Rogers were tried together. The State's theory of the case was that Pellum was the shooter. The jury convicted both Pellum and Rogers.

At sentencing, Rogers requested that the court impose an exceptional sentence below the standard range of 321-407 months. He urged a sentence of 84 months. In support of this request, Rogers argued that his youthfulness and developmental immaturity mitigated his capacity to appreciate the wrongfulness of his conduct. He presented evidence that, in addition to being immature at the

---

[2] Rogers was also charged with unlawful possession of a firearm. The charge was dismissed following a successful suppression motion.

time of the crime because he was a juvenile, he was developmentally immature for his age. A psychological evaluation concluded that severe, untreated attention deficit hyperactivity disorder (ADHD), as well as adverse childhood experiences, rendered Rogers significantly immature, even compared to his peers. The psychologist expressed the opinion that Rogers was unable to appreciate the risks and consequences of his actions and was easily influenced by his peers.

Rogers also presented a mitigation report, which detailed challenging aspects of Rogers' upbringing, such as a lack of familial support, instability, and his witnessing frequent incidents of domestic violence, and explained how those experiences likely impacted him. In addition, Rogers argued that his limited role in the murder justified a lower sentence because the justifications for the felony murder rule are less compelling when applied to juveniles. Finally, Rogers presented evidence of his rehabilitation during his incarceration, including his earning a general equivalency diploma with a 4.0 grade point average during his last two semesters.

The State opposed the grant of an exceptional sentence below the standard range, arguing that Rogers had not established sufficient mitigating circumstances. It requested the imposition of a low-end standard range sentence.

The trial court entered written findings that Rogers was significantly immature because of his age and ADHD, and that he had demonstrated the capacity for rehabilitation. The trial court concluded that Rogers' youthfulness

4

and developmental immaturity warranted the imposition of a sentence below the standard range, and pronounced a sentence of 106 months of incarceration.

The State appeals.

II

The State contends that the sentence imposed by the trial court was too lenient to be lawful, in that it was not consistent with the goals of the SRA.[3]  In advancing this assertion, the State acknowledges that youth can constitute a statutory mitigating factor insomuch as it can affect a person's capacity to appreciate wrongfulness and ability to conform conduct to the law.  The State concedes that trial courts have discretion to impose exceptional sentences below the standard range based on youth as a mitigating factor.  However, the State avers, trial courts may only impose an exceptional sentence within the confines of the SRA's "departures from the guidelines" provision, RCW 9.94A.535, with the exception that a court cannot be required to impose on a child a life or de facto life sentence.

Rogers counters that pursuant to State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), sentencing courts have absolute discretion to sentence juveniles below the standard range and, therefore, the decision as to the length of a sentence cannot be reviewed on appeal.

---

[3] The State has made clear that it is not now challenging the trial court's conclusion that a sentence below the standard range was warranted.  Instead, it is challenging the process by which the court arrived at its conclusion as to the length of the sentence it imposed, as well as challenging the length of the sentence itself.

Thus, as an initial matter, we must determine what obligations, if any, the SRA imposes on superior courts when sentencing juveniles who were tried as adults.

A

Our Supreme Court has announced that the SRA allows a sentencing court to impose an exceptional sentence below the standard range when a defendant's youthfulness significantly impairs that defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law. State v. O'Dell, 183 Wn.2d 680, 698-99, 358 P.3d 359 (2015); RCW 9.94A.535(1)(e). But youth is not a per se mitigating factor, even for juvenile defendants. State v. Ramos, 187 Wn.2d 420, 434, 387 P.3d 650 (2017). The SRA provision that governs departures from the guidelines places the burden of proving that substantial and compelling reasons justify imposing an exceptional sentence on the defendant. RCW 9.94A.535. Neither the state constitution nor the Eighth Amendment prohibit assigning the burden in this manner. State v. Gregg, 196 Wn.2d 473, 478, 474 P.3d 539 (2020); Ramos, 187 Wn.2d at 433; accord Jones v. Mississippi, No. 18-1259, slip op. at 14 (Apr. 22, 2021), https://www.supremecourt.gov/opinions/20pdf/18-1259_8njq.pdf.

However, the SRA does not alone govern the ways in which sentencing courts may exercise discretion in order to properly account for a defendant's youth. Our Supreme Court has explained that the Eighth Amendment requires that

> sentencing courts must have complete discretion to consider
> mitigating circumstances associated with the youth of any juvenile

> defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not. To the extent our state statutes have been interpreted to bar such discretion with regard to juveniles, they are overruled. Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements.

Houston-Sconiers, 188 Wn.2d at 21 (footnote omitted).[4]

Accordingly, a sentencing court could not be required to impose on 16- and 17-year-old defendants firearm enhancement penalties that would otherwise be mandatory under the SRA. Houston-Sconiers, 188 Wn.2d at 25-26 ("The mandatory nature of these enhancements violates the Eighth Amendment protections discussed above."). The Houston-Sconiers court also affirmed that because youth can be a statutory mitigating factor under the SRA, an exceptional sentence of zero months on the substantive offenses was not "technically illegal" as the sentencing court had assumed. 188 Wn.2d at 24 (citing O'Dell, 183 Wn.2d at 688-89).

However, unlike purely statutory mitigating factors, the mitigating circumstances related to a defendant's youth present considerations that a sentencing court is *required* to consider:

---

[4] Our Supreme Court has since explained in a plurality opinion that article I, section 14 of our state constitution imposes the same requirement. In re Pers. Restraint of Monschke, __Wn.2d__ , 482 P.3d 276, 279 (2021). At oral argument, counsel for the State observed that only four justices joined the opinion opining that article I, section 14 imposes such a requirement. However, neither the concurring nor the dissenting opinions express any disagreement with this principle. Justice González's concurrence indicated his ongoing belief that the O'Dell decision represented a significant change in the law. Monschke, 482 P.3d at 288-89 (González, J., concurring). Justice Owens' dissent expressed concern about expanding these protections to young adults. Monschke, 482 P.3d at 289-91 (Owens, J., dissenting). Further, in the context of sentencing a juvenile tried as an adult in superior court, the Supreme Court has determined that article I, section 14 provides the defendant greater protection than does the Eighth Amendment. State v. Bassett, 192 Wn.2d 67, 82, 428 P.3d 343 (2018). Accordingly, given that the Eighth Amendment requires that superior courts have discretion to consider the mitigating circumstance of youth when they sentence juveniles, article 1, section 14 logically must also so require.

> Miller [v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012),] requires such discretion and provides the guidance on how to use it. It holds that in exercising full discretion in juvenile sentencing, the court must consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her]." And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

Houston-Sconiers, 188 Wn.2d at 23 (citations omitted); see also In re Pers. Restraint of Ali, 196 Wn.2d 220, 236, 474 P.3d 507 (2020), cert. denied, 2021 WL 1163869, U.S. Wash. (Mar. 29, 2021) ("Reasonable jurists could disagree whether the court had such discretion or whether they could consider youth; however, because no prior precedent *required* courts to do so, Houston-Sconiers announced a new rule.").

Furthermore, unlike any other mitigating factor, when considering youth, a sentencing court may depart from mandatory sentencing enhancements. Trial courts have "full discretion to depart from the sentencing guidelines and any otherwise mandatory sentence enhancements, and to take the particular circumstances surrounding a defendant's youth into account." Houston-Sconiers, 188 Wn.2d at 34.

Our Supreme Court has explained that Houston-Sconiers represents a significant change in the law. Ali, 196 Wn.2d at 233-34; In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 259, 474 P.3d 524 (2020), cert. denied, 2021 WL 1163870, U.S. Wash. (Mar. 29, 2021). This further emphasizes

that Houston-Sconiers identified the existence of a constitutionally required possession of discretion by courts when engaged in sentencing juveniles convicted as adults, as distinct from the preexisting conceptualization of youth as a statutory mitigating circumstance. Cf. In re Pers. Restraint of Light-Roth, 191 Wn.2d 328, 336-37, 422 P.3d 444 (2018) (O'Dell, which affirmed that youth may be a mitigating factor under the SRA, did not constitute a significant change in the law).

The State acknowledges that we are bound by Houston-Sconiers, but argues that its holding applies only to life sentences or de facto life sentences. According to the State, interpreting enhancements as discretionary avoided "the constitutional dilemma that occurs when a juvenile faces an effective life-without-parole sentence."

The State's effort to restrict the scope of Houston-Sconiers is unavailing. The two defendants in Houston-Sconiers did not themselves face life sentences. Instead, the sentences at issue were 372 months (31 years) and 312 months (26 years), respectively. 188 Wn.2d at 12-13. Similarly, the defendant in Domingo-Cornelio had been sentenced to 240 months (20 years), 196 Wn.2d at 260, and the defendant in Ali had been sentenced to 312 months (26 years), 196 Wn.2d at 228. Furthermore, even if they had faced life sentences, the defendants in Houston-Sconiers, Domingo-Cornelio, and Ali would have all had the opportunity to seek parole. See Houston-Sconiers, 188 Wn.2d at 22; RCW 9.94A.730. Nevertheless, as our Supreme Court explained:

> Statutes like RCW 9.94A.730 may provide a remedy on collateral
> review, Montgomery[ v. Louisiana, 577 U.S. 190, 136 S. Ct. 718,

9

[736], 193 L. Ed. 2d 599 (2016)], but they do not provide sentencing courts with the necessary discretion to comply with constitutional requirements in the first instance.

Houston-Sconiers, 188 Wn.2d at 23.

It is thus apparent that the holding of Houston-Sconiers does not apply only to situations in which an exercise of discretion is required to avoid the imposition of a mandatory life without parole sentence. Rather, Houston-Sconiers applies the animating principles of Miller, 567 U.S. at 480—that "children are different" and that courts must be empowered to treat them differently—to all instances in which juveniles are sentenced in adult court.[5] Houston-Sconiers, 188 Wn.2d at 34. Despite the State's professed belief that Houston-Sconiers is overbroad, we are bound by its precedent. State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984); State v. Mandefero, 14 Wn. App. 2d 825, 837, 473 P.3d 1239 (2020) (this court is bound by the Washington Supreme Court's decision in Houston-Sconiers).

With all this said, when sentencing a juvenile in adult court, the court retains its discretion to impose a standard range sentence. Gregg, 196 Wn.2d at 486. A standard range sentence does not become an exceptional sentence upward merely because it is imposed upon a juvenile. Gregg, 196 Wn.2d at 482-83. And as we explained, the burden of proving youth as a mitigating factor lies with the defendant. Gregg, 196 Wn.2d at 478; Ramos, 187 Wn.2d at 436-

---

[5] Division Two of this court recently held that "Houston-Sconiers does not apply to juvenile defendants sentenced in juvenile court." State v. S.D.H., No. 53841-5-II, slip op. at 2 (Wash. Ct. App. Apr. 13, 2021), http://www.courts.wa.gov/opinions/pdf/D2%2053841-5-II%20Published%20Opinion.pdf. We recognize that decision while noting that it resolved an issue not present herein.

37; accord Jones, slip op. at 14. Accordingly, the provisions of the SRA apply until a court has determined that youth has been established as a mitigating factor.

However, once a sentencing court has considered youth and determined that it is a mitigating factor, the exceptional sentencing requirements imposed by the SRA are simply no longer applicable. To comply with the "dual mandates of Houston-Sconiers, . . . sentencing courts *must* consider youth and *must* have discretion to impose *any* exceptional sentence downward based on youth." Ali, 196 Wn.2d at 236 (third emphasis added). That discretion is not cabined by the SRA. Indeed, because our Supreme Court has determined that the Eighth Amendment and article I, section 14 of our state constitution require that sentencing courts have complete discretion to consider pertinent aspects of youth in arriving at a just sentence, it necessarily follows that the legislature may not impose limitations on the exercise of that discretion.[6]

This conclusion follows logically from our Supreme Court's recent decision in In re Pers. Restraint of Monschke, __Wn.2d__, 482 P.3d 276 (2021). Therein, the court determined that article I, section 14 of our state constitution prohibits mandatory life without parole sentences when imposed upon 18-, 19-, or 20-year-old defendants. In separate prosecutions, Dwayne Bartholomew and Kurtis Monschke had each been convicted of aggravated murder in the first degree and sentenced to life without parole pursuant to RCW 10.95.030, which provides that any person convicted of aggravated murder must be sentenced to either life

---

[6] When, however, a sentencing court has determined that youth has not been established to be a mitigating circumstance, it must comply with the sentencing requirements of the SRA.

without parole or death.[7]  Monschke, 482 P.3d at 277.   The court held that mandatory sentences imposed on Bartholomew and Monschke were unconstitutional.  Monschke, 482 P.3d at 288.  Each man was deemed to be entitled to resentencing so that a court may consider his youth at the time of the offense and exercise discretion in fashioning an appropriate sentence.  Monschke, 482 P.3d at 288.

No SRA provision applied to the mandatory sentence imposed on either defendant.  Nor will any provision in the SRA cabin the discretion the sentencing court will now exercise in determining the appropriate sanction to impose on either Bartholomew or Monschke on remand.  This is clear, in that sentencing for aggravated murder in the first degree is not provided for within the SRA, and neither the provisions of the SRA nor the provisions of any other statute authorize courts to exercise discretion when sentencing upon a conviction for aggravated murder in the first degree.  See RCW 10.95.030; chapter 9.94A RCW.  Moreover, Bartholomew committed his act of aggravated murder before the effective date of the SRA.[8]  Nevertheless, a trial court must consider the mitigating qualities of youth and apply discretion in resentencing either Bartholomew or Monschke.[9]

---

[7] After State v. Gregory, 192 Wn.2d 1, 5, 427 P.3d 621 (2018) (death penalty is unconstitutionally cruel because it is imposed in an arbitrary and racially biased manner), life without parole is the only statutorily authorized sentence.

[8] The SRA became effective on July 1, 1984.  RCW 9.94A.905.  Bartholomew shot a laundromat attendant during the course of a robbery in 1981.  Monschke, 482 P.3d at 277.

[9] RCW 9.94A.535, which places the burden of proof upon a defendant to prove mitigating circumstances, is plainly not applicable to Bartholomew (whose crime predated the SRA) or Monschke (whose sentencing provisions are codified outside of the SRA).  No statute assigns the burden of proof of demonstrating that youth was a mitigating factor at sentencing for Bartholomew or Monschke.  See State v. Delbosque, 195 Wn.2d 106, 123, 456 P.3d 806 (2020) (unlike SRA, "Miller-fix" sentencing provision, RCW 10.95.030(3)(b), does not allocate a burden of proof).

Bartholomew and Monschke, young adults who committed the most serious crime our law recognizes, are thus constitutionally entitled to a sentencing court's discretion unfettered by provisions of the SRA. There is no logical reason why a true juvenile who, at 16 years of age, committed a less serious crime is not entitled to the same benefit. Just as Bartholomew and Monschke will be sentenced with their entreaties for leniency unfettered by any restrictions or concerns emanating from the SRA, so must this same unfettered status apply in our review of the sentencing court's decision herein.

B

Rogers contends that when a trial court imposes an exceptional sentence below the standard range based on youth as a mitigating factor, that sentence cannot be reversed, or even reviewed, on appeal. We disagree. Because completely unfettered discretion poses a risk of arbitrary decision-making, and a total prohibition on meaningful appellate review would violate our state constitution's guarantee of "the right to appeal in all cases," Rogers' contention fails.

When the reasoning underlying a sentencing court's decision may not be reviewed at all, due process concerns arise. See State v. Jacobson, 92 Wn. App. 958, 968, 965 P.2d 1140 (1998) ("Moreover, the procedural safeguard requiring sentencing courts to state their reasons for imposing exceptional

---

However, if it were the State's burden to prove that youth was not a mitigating factor before a life without parole sentence could be imposed, the Sixth Amendment would require that a jury make such a finding. See Jones, slip op. at 10 n.3 ("If permanent incorrigibility were a factual prerequisite to a life-without-parole sentence, this Court's Sixth Amendment precedents might require that a jury, not a judge, make such a finding."); Blakely v. Washington, 542 U.S. 296, 304-05, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

sentences on the record—subject to appellate review—prevents arbitrary sentencing decisions."). Moreover, article I, section 22 of the Washington Constitution guarantees all criminal defendants the right to appeal, and a complete bar on direct appeals of sentences is not permissible. State v. Delbosque, 195 Wn.2d 106, 126, 456 P.3d 806 (2020).

Accordingly, despite our Supreme Court's use of the phrase "absolute discretion," some form of appellate review is necessary to ensure nonarbitrary decisions and to satisfy defendants' constitutional right to appeal.

Because, as we have determined, the SRA is not applicable once a sentencing judge has found that youth is a mitigating factor, we will review such a sentencing court's determination pursuant to the standard of appellate review that obtained prior to the SRA.[10]

Prior to the enactment of the SRA, sentencing courts possessed broad discretion. State v. Flowers, 30 Wn. App. 718, 724, 637 P.2d 1009 (1981); State v. Wachsmith, 23 Wn. App. 283, 284, 595 P.2d 64 (1979). "The sentencing of criminals is subject to the exercise of sound judicial discretion which will not be set aside absent an abuse." State v. Cunningham, 96 Wn.2d 31, 34, 633 P.2d 886 (1981); see State v. Blight, 89 Wn.2d 38, 42, 569 P.2d 1129 (1977) ("The trial court did not abuse its discretion in pronouncing sentence."). Such an abuse of discretion existed only where it could be said no reasonable judge would have taken the view adopted by the trial court. Blight, 89 Wn.2d at 41; Wachsmith, 23

---

[10] We say this in anticipation of that being the standard of review on appeal of a sentence imposed on Bartholomew or Monschke upon remand. Given that the same constitutional right is at stake, it stands to reason that the applicable appellate standard of review would also be the same.

Wn. App. at 284-85 (citing State v. Hurst, 5 Wn. App. 146, 148, 486 P.2d 1136 (1971)).

In order for an appellate court to determine whether a sentencing judge has acted within these bounds, sentencing judges must explain their reasoning. This is why, under the SRA, to impose an exceptional sentence, courts are required to "set forth the reason for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. Although, as we have explained, once a judge has determined that a defendant has proved that the defendant's youth is a mitigating circumstance, the SRA is inapplicable, the need to review the reasoning underlying discretionary sentencing determinations remains.

Accordingly, we hold that when sentencing judges determine that youth is a mitigating factor and exercise their broad discretion to fashion an appropriate sentence, such judges (1) must explain the reasons for their determination, and (2) those reasons must be rationally related to evidence adduced at trial or presented at sentencing. We note that such reasons are not limited to those expressly authorized by the SRA, or to any goals or concerns expressed in the SRA. For example, a judge is free to consider the specific role that the defendant played in the commission of the offense for which the sentence is being imposed.

> When sentencing juveniles, a superior court must
>
> consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." Miller, 567 U.S. at 477. It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation

in the crime, and "the way familial and peer pressures may have affected him [or her]." Id. And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated. Id.

Houston-Sconiers, 188 Wn.2d at 23.

When a sentencing court has considered these factors and concluded that youth is a mitigating circumstance, it must then exercise discretion in selecting the appropriate length of incarceration to impose. Once done, it must explain the reasons for its determination. We do not require that sentencing courts explain the calculation leading to the precise length of the sentence imposed. Instead, the court must provide sufficient reasoning to allow for meaningful appellate review as to whether any reasonable judge could make the same decision based on the evidence and information before the sentencing judge.

C

Here, the sentencing court entered sufficient written findings to explain its decision. It found that, because Rogers suffered from severe ADHD and had certain adverse childhood experiences, at the time of the crime, he was much more impulsive and immature than a typical child of 16. Furthermore, it found that Rogers' behavior during his incarceration showed his capacity for rehabilitation. Finally, it found that Rogers did not personally shoot the victim.[11] It concluded that Rogers had established by a preponderance of the evidence

---

[11] The trial court did not base its decision on Rogers' role in the crime. While it found (somewhat imprecisely) that Rogers was not the shooter, it observed that under the definition of first degree murder set forth in the SRA, all participants are equally culpable. See RCW 9A.32.030. Because the SRA does not apply in this instance, the sentencing court was free to consider the specific role that Rogers played in the offense for which he was sentenced.

that his youthfulness and developmental immaturity were mitigating circumstances, and that based on its individualized consideration of Rogers' youth and life circumstances, a sentence of 106 months of confinement was appropriate.

Under such circumstances, a reasonable judge could conclude that a 106 month sentence was appropriate for a 16-year-old defendant convicted of murder in the first degree. Accordingly, we conclude that the trial court did not abuse its discretion. No error is shown.

Affirmed.

_Duwn, J._

WE CONCUR:

_Bumm, J_  _Andrus, A.C.J._