IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85084-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BRANDON KENNETH WHITE, | |
| Appellant. | |

CHUNG, J. — Brandon White committed aggravated murder in the first degree when he was 19 years old. In 2001, he was convicted and sentenced to life without parole (LWOP). In 2023, White received a resentencing hearing based on In re Pers. Restraint of Monschke,[1] and was sentenced to 39 years of confinement. White appeals, claiming that the sentencing court erred by presuming an LWOP sentence and placing the burden on him to prove mitigating factors by a preponderance of the evidence. He also argues the court placed too little weight on his evidence of rehabilitative efforts.

Subsequent to White's resentencing, our Supreme Court held in State v. Carter[2] that in a resentencing based on Monschke, the sentencing court has discretion to impose a sentence of LWOP or anything less than LWOP. In this case, White's sentencing court understood its discretion; considered the

_____

[1] 197 Wn.2d 305, 482 P.3d 276 (2021).
[2] 3 Wn.3d 198, 219, 548 P.3d 935 (2024).

evidence of mitigating qualities of youth, including whether White's crime reflected youthful immaturity, impetuosity, or the inability to appreciate the consequences and risks, as well as the capacity for, and actual rehabilitation; considered the individual facts of the case; and explained its reasoning. We conclude that the court did not abuse its discretion by imposing a 39-year determinate sentence. We therefore affirm.

BACKGROUND

In December 2001, a jury convicted Brandon White of aggravated murder in the first degree and made special findings that he committed the crime with a firearm and a deadly weapon other than a firearm, a knife. White was 19 years old at the time of the crime. The trial court sentenced him to LWOP. On direct appeal, this court affirmed his conviction in 2003. State v. White, noted at 117 Wn. App. 1025 (2003), 2003 WL 21387219, at *3.

In 2019, this court denied White's personal restraint petition (PRP), which claimed a "constellation of recent federal and state cases that address sentencing of juveniles and youthful offenders" constituted a significant change in the law which had rendered the statute under which he was sentenced unconstitutional. In re Pers. Restraint of White, No. 76988-0-I, slip op. at 4 (Wash. Ct. App. Dec. 2, 2019) (unpublished) (https://www.courts.wa.gov/opinions/pdf/769880.pdf). Subsequently, White moved under CrR 7.8 to be resentenced based on Monschke, which held that sentencing all 18- to 20-year-olds convicted of aggravated murder to mandatory LWOP under RCW 10.95.030 regardless of individual characteristics violates the

state constitution because it denies courts discretion to consider the mitigating qualities of youth. 197 Wn.2d at 326, 329. After initially transferring White's CrR 7.8 motion to this court as a PRP, the trial court granted his motion in February 2023.

At resentencing, the State recommended that the court impose the same sentence, LWOP. It argued White is "one of those rare and uncommon youthful offenders that deserves" LWOP. The court asked the State whether, assuming White's crime did not reflect youth, the law authorized LWOP as an appropriate sentence. The State answered, "The Court has absolute unfettered discretion at this point." The court followed up, "Even if the crimes did not reflect [youth]?" The State answered,

> I still think the Court has discretion. . . . So I don't think . . .
> assuming . . . there's nothing about mitigating youthful
> characteristics of this crime that the Court finds that you're
> mandated to sentence him to life without [parole]. I just don't think
> that's the state of the law at this point.

White requested a sentence of 265 months, equivalent to time served, to be followed by 36 months of community custody. He based his recommendation on the standard range for murder in the first degree for a person with an offender score of 0 such as White, which is 240 to 320 months. White asserted that, "Your Honor has the discretion to . . . sentence [White] however you see fit."

At his resentencing hearing, White presented reports from two experts: a forensic psychological evaluation and a response to concerns raised in the State's resentencing brief by Dr. Michael Stanfill and a mitigation investigation by

3

clinical social worker Tiffany Cunningham. Neither testified; the State stipulated to the admission of their reports in lieu of their testimony.

Dr. Stanfill opined on White's risk for future offending based on several clinical assessments, including the Violence Risk Appraisal Guide, Revised Version (VRAG-R). He concluded that White's current risk for future acts of violence or aggression were in the low range and he was in the low recidivism risk categorization group. Dr. Stanfill stated that there was significant evidence White was "developmentally immature at the time of the alleged offense and did not have the cognitive flexibility or appreciation of reckless behavior that would typically be seen in a fully functioning and developed adult." Dr. Stanfill's report concluded that "there was significant evidence that Mr. White was immature, a product of his environment and susceptible to negative social influences at the time of the 2000 index offense and not necessarily representative of who he was now or who he will be in the coming years."

Cunningham's report stated that "[t]he impulsivity characterizing Brandon's involvement in the offense is consistent with the brain-immaturity of a 19-year-old" and his "participation in the offense represented impulsive conduct on his part, even though some superficial 'planning' may have been involved and the sequence leading up to the offense extended over a number of hours." Cunningham opined that neurodevelopmental factors and psychosocial factors, including fetal drug and alcohol exposure, White's own substance abuse, and parental abandonment and abuse, further reduced his functional maturity at age 19 relative to the typical 19-year-old, and his developmental history reflected only

limited protective factors or "developmental assets" that would have reduced his risk as a youth of delinquency and serious violence. Cunningham noted that while incarcerated, White exhibited "significant gains in psychosocial maturity and sustained rehabilitation," and he now had a more stable, sober, and prosocial family network than in his teen years. Cunningham summarized, "White's conduct at the time of the offense is not predictive of his risk of offending as a middle-aged adult. The age-related growth in Mr. White's psychosocial maturity, and associated capacity to desist from misconduct, is evident in his incarceration adjustment consistently over the years."

White also presented evidence of his rehabilitation while in prison. He earned his general equivalency diploma, took horticulture courses, learned employable trade skills, demonstrated a work ethic that Department of Corrections staff praised, took a leadership role in an incarcerated youth program, proved himself trustworthy in prison jobs, and became a role model for other inmates. He did not incur a single infraction during 22 years in prison. His wife Danielle testified that he is an "amazing dad" to their three-year-old daughter. Former inmates and a former corrections officer who knew White inside prison testified on his behalf at his resentencing, as did family members and White himself. Three of the victim's brothers and a sister also testified at the hearing.

The court sentenced White to 39 years, or 468 months, of total confinement and 36 months of community custody. The court's order states that the sentence of 468 months included 84 months for weapons enhancements and

that "both weapon enhancements," 60 months for the firearm and 24 months for the knife used in the crime, are "to run concurrently."

White timely appealed.[3]

DISCUSSION

White raises several issues on appeal. First, he argues the sentencing court erred by treating LWOP as the presumptive sentence and placing the burden on White to prove mitigating factors by a preponderance of the evidence. He also claims the court erred by placing "too much focus on retribution and not enough on rehabilitation." Finally, he argues that the sentencing court erred by failing to conduct an evidentiary hearing to resolve a material disputed fact. The State contends that the sentencing court properly exercised its discretion at resentencing, including placing the burden of proof on defendant to prove mitigating factors of youth and properly considering evidence of rehabilitation.

The Washington Supreme Court has held that "children under the age of 18 are different" and "that young adults are different as well, based on well-established neurological science, sociological analysis, and legal principles." Carter, 3 Wn.3d at 211. As a result, sentencing children to mandatory LWOP violates the federal and state constitutions. Miller v. Alabama, 567 U.S. 460, 465 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (sentencing children to mandatory LWOP is unconstitutional); State v. Bassett, 192 Wn.2d 67, 72, 73, 428 P.3d 343 (2018) (sentencing children to LWOP categorically violates article 1, section 14).

---

[3] The State initially filed a cross-appeal. At this court's request, the parties submitted supplemental briefs regarding the impact of Carter, 3 Wn.3d 198. In addition, the State filed a motion to withdraw its cross-appeal based on Carter. We hereby grant the motion.

And in Monschke, our Supreme Court held that sentencing all 18- to 20-year-olds convicted of aggravated murder to mandatory LWOP under RCW 10.95.030 violates article I, section 14 of our state constitution because it denies courts discretion to consider the mitigating qualities of youth. 197 Wn.2d at 326, 329.

Therefore, when sentencing a young adult offender convicted of aggravated murder in the first degree, the sentencing court " 'must consider [the] mitigating qualities of youth at sentencing and must have discretion to impose any sentence below' the otherwise applicable range." Carter, 3 Wn.3d at 211 (quoting State v. Houston-Sconiers, 188 Wn.2d 1, 21, 391 P.3d 409 (2017)). "The mitigating qualities of youth recognized in Miller and Houston-Sconiers are the defendant's ' "immaturity, impetuosity, and failure to appreciate risks and consequences," ' as well as 'the nature of the juvenile's surrounding environment and family circumstances,' ' "the way familial and peer pressures may have affected" ' them, and 'any factors suggesting that the child might be successfully rehabilitated.' " Carter, 3 Wn.3d at 220 (quoting Houston-Sconiers, 188 Wn.2d at 23 (quoting Miller, 567 U.S. at 477)) (applying factors to young adults aged 18 to 20 entitled to resentencing under Monschke).

"In addition to the mitigating qualities of youth, sentencing courts must also consider the facts of the particular case." Carter, 3 Wn.3d at 212 (citing State v. Haag, 198 Wn.2d 309, 323-24, 495 P.3d 241 (2021)). "[Y]outh is not a per se mitigating factor . . . . Instead, a juvenile offender must show that their immaturity, impetuosity, or failure to appreciate risks and consequences—characteristics of youth that suggest a juvenile offender may be less culpable

7

than an adult offender—contributed to the commission of their crime." State v. Anderson, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022). The court "must thoroughly explain its reasoning for imposing such a sentence, specifically considering the differences between youth and adults and how those differences apply to the case." Carter, 3 Wn.3d at 211.

We will not reverse a sentencing court's decision unless we find a clear abuse of discretion or misapplication of the law. Id. at 212. A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. Haag, 198 Wn.2d at 317. Untenable grounds consist of factual findings that are unsupported by the record. Carter, 3 Wn.3d at 212. "We review factual findings for substantial evidence, which 'exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.' " Id. (internal quotation marks omitted) (quoting Haag, 198 Wn.2d at 317).

A.  Court's Discretion

White argues that the sentencing court improperly viewed LWOP as the presumptive sentence and improperly placed the burden on White to demonstrate the mitigating qualities of youth. The State disagrees, contending that the sentencing court had discretion to impose a long sentence, provided it considered the mitigating qualities of youth and the facts of the case and detailed its findings. We agree with the State.

RCW 10.95.030(1) requires that "any person convicted of the crime of aggravated first degree murder shall be sentenced to life imprisonment without

8

possibility of release or parole." But "*mandatory* LWOP under RCW 10.95.030 [is] unconstitutional as applied to a subset of 18- to 20-year-old defendants . . . ." Carter, 3 Wn.3d at 219 (citing Monschke, 197 Wn.2d at 310-12, 327). For this subset of youthful offenders sentenced under Monschke, the statute's mandatory language must be replaced with permissive language, so it permits LWOP or anything less than LWOP. Carter, 3 Wn.3d at 219.[4] Therefore, the court may sentence a defendant to a determinate sentence because the individualized, discretionary sentencing is consistent with Monschke. Id.

As the Washington Supreme Court explained, "RCW 10.95.030 made LWOP mandatory and not discretionary, so the statute was unconstitutional in that respect, but not unconstitutional in its entirety." Carter, 3 Wn.3d at 219 (citing Monschke, 197 Wn.2d at 325 ("statute's rigid cutoff at age 18 combined with its mandatory language creates an unacceptable risk that youthful defendants without fully developed brains will receive a cruel LWOP sentence")). Under the doctrine of severability, a court can "modif[y] the existing statute in the manner required by article I, section 14 of the Washington Constitution prohibiting cruel punishment . . . by severing the unconstitutional 'mandatory' language and leaving the rest intact." Carter, 3 Wn.3d at 218. Such modification is required only if, as applied, the statute would be unconstitutional. As the court noted in

---

[4] The majority opinion in Carter acknowledges that "it may seem peculiar that the minimum for people 18 to 20 years old is zero years." 3 Wn.3d at 216. And the concurring opinion in Carter states that "it matters that the legislature set forth the minimum sentence a child may receive for aggravated first degree murder: 25 years." Id. at 232 (González, C.J., concurring) (citing RCW 10.95.030(2), the Miller-fix provision that applies to juveniles). As this statute is unchallenged and presumptively constitutional, "[i]t would be an abuse of discretion for a judge to sentence an 18-, 19-, or 20-year-old to a sentence that is less than what a judge is required to impose on a 14-year-old for aggravated first degree murder." Id.

Monschke, rather than impose a categorical bar, Miller " 'mandate[d] only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.' " Monschke, 197 Wn.2d at 327 (quoting Miller, 567 U.S. at 483). Until and unless a court has determined that youth has been established as a mitigating factor, the provisions of the applicable sentencing statute—here, RCW 10.95.030(1)—apply. Cf. Rogers, 17 Wn. App. 2d at 475 (reviewing sentence for juvenile defendant convicted of murder in the first degree, holding that "the provisions of the SRA apply until a court has determined that youth has been established as a mitigating factor").

The applicable sentencing statute, RCW 10.95.030, does not assign a burden of proof to demonstrate the mitigating qualities of youth, as it contemplates only mandatory LWOP. And the Sentencing Reform Act, RCW 9.94A.535, which places the burden of proof on a defendant to prove mitigating circumstances, does not apply to sentences imposed under RCW 10.95.030 for aggravated murder in the first degree.[5] See State v. Rogers, 17 Wn. App. 2d 466, 478 n.9, 487 P.3d 177 (2021) (neither the SRA nor any other statute "assigns the burden of proof of demonstrating that youth was a mitigating factor

---

[5] In this case, the court's written order used a standard form applicable for SRA sentences, and the court checked the boxes for "exceptional sentence" and "below standard range." The court also referred to the SRA standard for an exceptional downward sentence in its oral ruling, stating that "the defendant has the burden of proving by a preponderance of the evidence that his crime reflects transient immaturity as would justify an exceptional sentence below the sentence of life without the possibility of parole." Although the SRA did not apply to White's sentence, any error in referencing it was harmless. As discussed below in section B, the record amply demonstrates the court understood its discretion; determined that White's "crime did *not* reflect youthful immaturity, impetuosity, or the inability to appreciate the consequences and risks," but that there was strong evidence of rehabilitation; and explained its reasoning for imposing a 39-year determinate sentence.

at sentencing" 18- to 20-year-olds convicted of aggravated murder in the first degree). Similarly, the Washington Supreme Court has noted that the "Miller-fix" provision of the same statute,[6] which addresses sentencing of juveniles who are tried as adults for aggravated first degree murder, does not allocate a burden of proof, and "decline[d] to write one in." State v. Delbosque, 195 Wn.2d 106, 124, 456 P.3d 806 (2020). We follow the reasoning in Delbosque and decline to add language assigning a burden of proof when none exists in the statute.[7]

B. Court's Sentencing Decision

We next review the sentencing court's decision to impose a 39-year sentence for White's conviction for first degree aggravated murder. White claims that the sentencing court improperly placed "too much focus on retribution and not enough on rehabilitation." The State contends that the court did not abuse its discretion and gave the evidence of rehabilitation the appropriate weight. We agree with the State.

Again, we review the court's sentencing decision for an abuse of discretion. Carter, 3 Wn. 3d at 212. In a Monschke resentencing, "the trial court must consider whether each defendant was subject to the mitigating qualities of youth." Monschke, 197 Wn.2d at 329. The mitigating qualities of youth are "the defendant's ' "immaturity, impetuosity, and failure to appreciate risks and

---

[6] The current version of this provision is codified at RCW 10.95.030(2).

[7] Discussing Delbosque, the court in Rogers suggested in dicta that the burden of proof lies with the defendant. 17 Wn. App. 2d at 478 n.9 ("[I]f it were the State's burden to prove that youth was not a mitigating factor before a life without parole sentence could be imposed, the Sixth Amendment would require that a jury make such a finding."). While this reasoning in Rogers is compelling, we need not reach this issue to resolve this case. The Carter court reviewed Carter's and Reite's sentences for an abuse of discretion without explicitly assigning either party the burden of proof. 3 Wn.3d at 212. We similarly resolve this case by applying the same standard of review.

consequences, " ' as well as 'the nature of the juvenile's surrounding environment and family circumstances,' ' "the way familial and peer pressures may have affected" ' them, and 'any factors suggesting that the child might be successfully rehabilitated.' " Carter, 3 Wn.3d at 220 (quoting Houston-Sconiers, 188 Wn.2d at 23 (quoting Miller, 567 U.S. at 477)). Youth is not a per se mitigating factor, but rather, "a juvenile offender must show that their immaturity, impetuosity, or failure to appreciate risks and consequences—characteristics of youth that suggest a juvenile offender may be less culpable than an adult offender—contributed to the commission of their crime." Anderson, 200 Wn.2d at 285.

"When reviewing evidence regarding the mitigating characteristics of youthfulness, sentencing courts must 'meaningfully consider how juveniles are different from adults, how those differences apply to the facts of the case, and whether those facts present the uncommon situation where' the juvenile offender is just as culpable as an adult offender." Id. at 285 (quoting State v. Ramos, 187 Wn.2d 420, 434-35, 387 P.3d 650 (2017)). "While sentencing courts must focus on these mitigating qualities of youth, they must also consider the facts of the particular case, including those that counsel in favor of punishment." Anderson, 200 Wn.2d at 286.

Moreover, at a resentencing hearing for a juvenile or youthful offender, mitigation evidence can also include the measure of rehabilitation that has occurred since a youth was originally sentenced. Haag, 198 Wn.2d at 321. "Courts must 'consider the *capacity* for rehabilitation when making an initial

sentencing decision' involving LWOP, but 'evidence of *actual* "demonstrated maturity and rehabilitation" is generally considered later,' when determining whether a defendant 'who is up for parole should be given early release.' " Carter, 3 Wn.3d at 221 (quoting Ramos, 187 Wn.2d at 449) (quoting Miller, 567 U.S. at 477-79)). Thus, whether to consider such evidence of rehabilitation "is a question we leave to the discretion of the trial court in each case." Ramos, 187 Wn.2d at 449, quoted in Carter, 3 Wn.3d at 221.

Finally, " '[t]he sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the Miller Court and how those differences apply to the case presented.' " Haag, 198 Wn.2d at 321 (quoting Ramos, 187 Wn.2d at 444).

As White notes, when a sentencing court places more emphasis on retribution than on mitigation—in other words, when the court's focus is backward-looking rather than forward-looking—it can constitute reversible error. See Haag, 198 Wn.2d at 325. For example, in Haag, the court imposed a 46-year minimum and maximum LWOP sentence upon resentencing Haag, who had been 17 when he committed aggravated murder in the first degree. 198 Wn.2d at 316. At his resentencing hearing, Haag presented two expert witnesses, who testified that he was at a low risk of reoffending both at the time of the offense and currently, as well as numerous witnesses who testified to his rehabilitation. Id. at 314. The State did not rebut Haag's evidence and offered only victim impact testimony. Id. at 315. Yet the "court's emphasis on retribution was stark," and it noted that retribution matters, stating, "Under the retributive theory,

severity of the punishment is calculated by the gravity of the wrong committed."
Id. at 323. By contrast, when it considered youth, it primarily focused on the
victim's youth and discussed Haag's youth only in "cursory" fashion. Id. at 323-
24. Our Supreme Court held that "in the face of the substantial and
uncontroverted mitigating evidence," the court had impermissibly favored
retributive factors over mitigation factors. Id. at 325.

Here, unlike the court in Haag, White's sentencing court understood and
properly exercised its discretion. First, the sentencing court explained the
applicable law in detail, beginning by reviewing federal and Washington State law
regarding sentencing juveniles and young adults for aggravated first degree
murder. The court traced the "two strands" of reasoning from Roper v. Simmons,
543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and Graham v. Florida,
560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)—"children are different"
and "individualized sentencing"—that led to the U.S. Supreme Court's decision in
Miller. The court reviewed the application of Miller in Washington State: Houston-
Sconiers, which affords courts complete discretion to individually consider youth
when sentencing juveniles; Bassett, which categorically bars juvenile LWOP
sentences under article I, section 14 of Washington's constitution; and the
extension of Miller's protections to young adults in Monschke. The court noted
that evidence of rehabilitation must be considered under Haag and Anderson.

Then, the court discussed the evidence presented at the sentencing
hearing. First, the court "found that the crime did not reflect youthful immaturity,
impetuosity, or the inability to appreciate the consequences and risks associated

14

with his action." It found that neither expert's report addressed the specific facts of White's crime. Second, it found White's crime was not impetuous because "[t]he evidence before the jury was that this was a planned-out event," especially because White obtained the firearm and the knife used in the crime in advance and wore a suit as a ruse to gain entry. Third, White's crime did not reflect youthful immaturity because the evidence showed White planned and committed the murder alone, not under the influence of peer pressure. Fourth, the court found that White did not fail to appreciate the risks and consequences of his actions. Instead, the evidence showed he killed Gail Jubie to prevent her from becoming a witness. Additionally, the evidence showed White appreciated the consequences of his crime because he understood the penalties he faced; when he was interviewed by police, he demonstrated maturity and understanding of the consequences by explaining the differences between burglary and robbery, as well as between burglary and attempted burglary. He told the detectives he had given them "reasonable doubt" to prove he was not at the crime and would beat the charge, which the court found "reflect[ed] a level of maturity and understanding of the criminal justice process and the burden of proof at trial."

The court also considered White's rehabilitation in the years that he has been incarcerated. The evidence showed White was a "model prisoner" who never had "any infractions in 22 years of incarceration." The court also said, however, that the same evidence "undercuts, while being a very positive thing for the defendant, in some way may be looked at as undercutting a claim that he was so impulsive early on that he couldn't stay out of committing crimes."

15

Nevertheless, the court noted White stayed out of crimes while in a structured setting, which was "remarkable because it shows that the defendant has the potential of rehabilitation and can be rehabilitated."

The court noted that "Haag instructs this Court to place more emphasis on the mitigating factors, even as the heinous nature of the crime counsels towards punishment." The court then described the "strong supportive voices" at the resentencing hearing from six former inmates who spoke about White's positive influence; a former corrections officer who described White as a "model prisoner" and opined he could be rehabilitated; and a chaplain. The court noted that the State did not challenge White's infraction-free record and other supportive observations. Moreover, Dr. Stanfill opined that the defendant scored a low risk of reoffending.

Therefore, the court concluded, the evidence "support[s] an argument that the defendant is not so fixed that he is incapable of rehabilitation such that he should be sentenced to die in prison." While the court was concerned that White "only recently took responsibility for his actions in the death of Ms. Jubie," the court could not agree with the State that White could not be rehabilitated: "To do so would be to disregard the undisputed evidence before the Court that instructs this Court that the defendant can be rehabilitated." The court also noted that White came from a dysfunctional background, and while not itself controlling, it was one of the factors that the court considered.

The court rejected the State's recommended sentence of LWOP but also determined that the defendant's request for "time served at 22 years would

disregard the heinous nature of the crime" and the fact that the crime did not reflect youthful immaturity, impetuosity, or the inability to appreciate the consequences and risks associated with his action. Overall, the court noted "punishment must promote respect for the law by providing punishment that is just," but concluded neither White's proposed 22-year sentence nor the State's proposed LWOP sentence, which would have ignored the evidence of rehabilitation, would accomplish this goal. Having weighed the evidence of the mitigating factors of youth, the court sentenced White to 39 years.

White argues the resentencing court gave his rehabilitation evidence only "minimal legal weight," and then used it as "a double-edged sword" against him. He points to the court's statements about the "heinous nature of the crime" and that "punishment must promote respect for the law," as well as its reference to the "tragedy of great – of immense proportions" for the families involved. But the court explicitly stated its understanding that when sentencing a youthful offender, Haag requires the court to place more emphasis on mitigating factors. And Haag does not require the court to completely disregard retribution or ignore victim impact statements. The court's explanation of the evidence here is nothing like the court's description in Haag, which emphasized graphic details and the harm to the victim, while acknowledging the multiple witnesses' mitigating evidence only briefly.

Instead, the court's analysis of rehabilitation in the present case is similar to the court's analysis of mitigating evidence for defendant Reite, discussed in Carter. As with White, in Reite's case, the court found strong evidence of

17

rehabilitation and stated that it "demonstrates her diminished culpability and her great capacity for change." Carter, 3 Wn.3d at 224. Nevertheless, both in this case and Reite's case, the sentencing courts found that the defendant's crimes did not reflect the mitigating qualities of youth. In Reite's case, the court "was not completely persuaded that youthful characteristics were a substantial factor in Reite's crimes," shooting and killing both her mother and her mother's partner. Id. at 204, 208. Reite's crimes were not impetuous, the court found, because "[they] related to planned financial crime against her mother." Id. at 209. Further, Reite's home life was nurturing. Id. No peer pressure influenced her and her youth did not impact her legal defenses. Id. Also, the court "noted Reite's rehabilitation," that she had " 'persevered' in her efforts at self-improvement 'despite it being hopeless, or seeming so.' " Id. (quoting the record). Reite took responsibility for "being unimpacted by the enormity of her actions at the time of the crime . . . and realized the pain she caused to everyone who loved her mother and her mother's partner." Id. at 223. The court affirmed Reite's sentence of two consecutive 280-month sentences (a little more than 46 years), reasoning that Reite's "is a rare case where a sentence of this length is appropriate because the detailed findings by the superior court comported with the requirements of individualized consideration of the mitigating qualities of youth." Id. at 224.

Here, the record shows the sentencing court fully considered White's proffered evidence of mitigating qualities of youth, including evidence of rehabilitation, as Monschke and other controlling authority require. Substantial evidence supports the court's detailed findings that comported with the

requirements of individualized discretion and consideration of the mitigating qualities of youth.[8] The court did not abuse its discretion in sentencing White to 39 years of confinement. Though it is a long sentence, it is not an unconstitutional de facto LWOP sentence because substantial evidence supports the trial court's conclusion that White's crime did not reflect the hallmarks of youth. See Anderson, 200 Wn.2d at 280 (clarifying Haag and affirming 61-year sentence when substantial evidence supported court's conclusion that defendant's crimes did not reflect youthful characteristics).

We affirm.

_Chung, J._

WE CONCUR:

_Feldman, J._          _Bowman, J_

---

[8] White also argues on appeal that the sentencing court erred by failing to conduct an evidentiary hearing to resolve a material disputed fact. He notes that at trial he admitted he was present during Jubie's murder but claimed another person shot her, slit her throat, and stabbed her. He claims that "the jury's guilty verdict did not necessarily resolve that factual dispute in the State's favor," and the factual claim that White acted alone "loomed large and figured prominently" in both parties' presentations, as well as in the sentencing decision. But as the State notes, White's sentencing memorandum does not mention the alleged other person, and White's reply to the State's sentencing brief states, "Defense is not here to relitigate the facts. Everyone, including Brandon, agrees that Brandon was responsible for the death of Gail Jubie." He also addressed the court and stated, "I am guilty of the murder of Gail Jubie." In response to the State's argument that White did not object and, thus, did not preserve the issue for appeal, White claims it was the State's obligation to object and identify the factual dispute. We agree with the State that White cannot now on appeal raise this issue, when he not only did not raise the issue below, but explicitly agreed with the State that he was responsible for the murder. See RAP 2.5(a).