# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58780-7-II |
| Respondent, | |
| v. | |
| NGA (NMI) NGOEUNG, aka SHAMROCK, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—In 1994, Nga Ngoeung was convicted of 2 counts of aggravated murder and 2 counts of assault. At the time of his crimes, Ngoeung was 17 years old, but he was tried as an adult. He received a sentence of life without the possibility of parole (LWOP). Since his conviction, Ngoeung has been resentenced 3 times, pursuant to *Miller v. Alabama* and its progeny.[1] Most recently, Ngoeung was resentenced for the third time in April 2023. The court imposed the following sentence: 25 years to life on each murder conviction, to run concurrently to each other; 140 months on the first assault conviction and 123 months on the second assault conviction, to run concurrently to each other but consecutively to the murder convictions.

Ngoeung appeals from his 2023 sentence, arguing first that the court erred in including a 5-year mandatory minimum term of confinement on Ngoeung's assault convictions, thereby

---

[1] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); former RCW 10.95.030 (2014) and former RCW 10.95.035 (2014); *State v. Bassett*, 192 Wn.2d 67, 428 P.3d 343 (2018); *State v. Gilbert*, 193 Wn.2d 169, 438 P.3d 133 (2019); *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

converting the determinate sentences into indeterminate sentences. He also argues that the court erred in imposing a mandatory minimum on his assault convictions absent the specific finding required by the statute. Next, Ngoeung argues, the court erred in imposing sentences above the minimum term of the standard range on his assault convictions. Finally, he argues that due to recent statutory amendments, the victim penalty assessment (VPA) and DNA collection fees previously imposed on him should be stricken. The State concedes that the court erred in imposing the mandatory minimum terms of confinement on Ngoeung's assault sentences. Next, the State argues that the court did not abuse its discretion in imposing a 36-year sentence. Finally, the State concedes that the VPA and DNA collection fees should be stricken.

We hold first, that the superior court did not err in sentencing Ngoeung's assault convictions under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. Second, we hold that the court erred in imposing a mandatory minimum in relation to the assault convictions absent the necessary finding required under RCW 9.94A.540(1)(b)—that "the offender used force or means likely to result in death or intended to kill the victim." Third, we hold that the superior court did not abuse its discretion in imposing sentences on the assault convictions above the minimum term, as the court meaningfully considered the mitigating factors of youth and Ngoeung's capacity for rehabilitation, and the court adequately explained it's reasoning behind the sentence. Fourth, we hold that the VPA and DNA collection fees should be stricken. We remand to the trial court to strike the VPA and DNA collection fees as well as the language in the judgment referencing mandatory minimums in relation to the assault convictions.

No. 58780-7-II

FACTS

I. BACKGROUND

When Ngoeung's case was before this court in 2021, we summarized the factual

background of the crime at the center of his case as follows:

> In August 1994, four high school boys drove down a Tacoma street
> throwing eggs. Some of the eggs hit a house that turned out to be a hangout for a
> local gang. Ngoeung, then age 17, Oloth Insyxiengmay, age 15, and Soutthanom
> Misaengsay, age 13, were associated with the gang and were outside the house
> during the egging. Believing the attack was gang related, Insyxiengmay entered the
> house and took the owner's rifle. The three boys got in a car, and with Ngoeung
> driving, followed the other car. Insyxiengmay put the rifle out the window and shot
> at the other boys' car. Two of the boys in the other car were killed.
>
> Insyxiengmay, Ngoeung, and Misaengsay then returned to the house and
> Insyxiengmay handed the rifle to someone inside the house, told her to get rid of it,
> and said, "[w]e shot them up. We shot them up. They threw eggs at us, the Rickets.
> We shot them up." *Insyxiengmay v. Morgan*, 403 F.3d 657, 661 (9th Cir. 2005).
> Ngoeung was arrested on September 3, 1994 and confessed to police that he drove
> the car during the shooting.

*State v. Ngoeung*, No. 54110-6-II, slip op. at 2-3 (Wash. Ct. App. Dec. 7, 2021) (unpublished),

https://www.courts.wa.gov/opinions/pdf/D2%2054110-6-II%20Unpublished%20Opinion.pdf.

II. PROCEDURAL HISTORY

A. Jury Trial & Initial Sentence

In 1995, a jury found Ngoeung guilty of 2 counts of aggravated murder in the first degree,

2 counts of assault in the first degree, and 1 count of taking a motor vehicle without the owner's

permission (TMVWP). Ngoeung was 17 years old at the time. Ngoeung was tried as an adult. After

the original conviction, the court imposed a nondiscretionary sentence under former RCW

10.95.030(1) (1993) of LWOP for the murder convictions. The court imposed the following

sentences on the remaining convictions: 136 months for the first assault conviction, 123 months

for the second assault conviction, and 8 months for the TMVWP conviction. The court ruled that all of Ngoeung's sentences would be served consecutively to one another.

B. First Resentencing (2015)

Ngoeung was resentenced for the first time in January 2015, pursuant to the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, (holding that automatic imposition of LWOP for minors under age 18 violated the US Constitution), and the subsequent "*Miller* fix," former RCW 10.95.035 (2014) and former RCW 10.95.030(3) (2014). The court again imposed a sentence of LWOP for the aggravated murder convictions, and ordered that the sentences run consecutively. The court did not change the original sentences for the assault and TMVWP convictions.

C. Second Resentencing (2019) & Subsequent Appeal

Ngoeung returned to the court for a second resentencing in September 2019, after our supreme court held that a LWOP sentence for a juvenile was categorically barred by the state constitution. *State v. Bassett*, 192 Wn.2d 67, 91, 428 P.3d 343 (2018). At the second resentencing, the court imposed a sentence of 25 years to life for the 2 aggravated murder offenses. The court ordered 102 months of confinement for the first assault conviction, 93 months of confinement for the second assault conviction, and 8 months for the TMVWP conviction. The court ordered for the murder sentences to be served concurrently to each other, and for the TMVWP sentence to be served concurrently, but for the assault sentences to be served consecutively to both each other and to the murder sentences.

Ngoeung appealed the 2019 sentence to this court, arguing, in part, that the trial court "failed to meaningfully consider all of the *Miller* factors, failed to take into account his history

when evaluating his potential for rehabilitation, and failed to explain why it imposed standard range consecutive sentences for his two assault convictions." *Ngoeung*, slip op. at 1-2. Additionally, Ngoeung argued that the superior court "improperly placed the burden to prove his youth as a mitigating factor on him," when it should have been place on the State. *Id.* at 2.

We held that "the trial court both failed to meaningfully consider the *Miller* factors and failed to explain its reasoning in imposing Ngoeung's sentence," and reversed and remanded the case for resentencing. *Id.* We explained that "a sentencing court must *expressly* consider the impact of youth on culpability so that this consideration appears on the record," and that the 2019 resentencing court "failed to thoroughly explain its reasoning on the record." *Id.* at 18. Specifically, we noted, the sentencing court failed to explain "why the mitigating factors of youthfulness warranted an exceptional sentence in the form of running the aggravated murder charges concurrently, while still imposing standard sentence ranges for the assaults and simultaneously running those consecutively." *Id.* at 21. Additionally, we held that the sentencing court "also failed to meaningfully consider all of Ngoeung's evidence regarding his potential for rehabilitation because it did not address how the evidence related to Ngoeung's capacity to change." *Id.* at 18.

D. Third Resentencing (2023)

*1. New Sentence*

Pursuant to our decision in *State v. Ngoeung*, No. 54110-6-II, Ngoeung was resentenced for the third time in April 2023. According to the judgment and sentence, the standard sentencing ranges for Ngoeung's convictions are as follows: 25 years to life for the two murder convictions; 111-147 months for the first assault charge; 93-123 months for the second assault charge, and; 4-12 months for the TMVWP charge. Ngoeung requested that the court "impose a minimum term of

total confinement of thirty years-to-life on the aggravated murder in the first-degree convictions concurrent with each other and concurrent with two other convictions for assault" as well as the TMVWP conviction. Clerk's Papers (CP) at 112.

The superior court ordered the following sentences: 25 years to life on the first murder conviction; 25 years to life the second murder conviction; 140 months on the first assault conviction; 123 months on the second assault conviction; and 12 months on the TMVWP conviction. The court ruled that the sentences on the murder convictions shall be served concurrently, and that the sentences for the assault convictions would be served concurrently with each other but consecutively with the sentences for the murder convictions. The court ruled that the sentence on the TMVWP conviction would be served concurrently to the other sentences. The court noted that it was imposing an exceptional downward sentence by ordering for the sentences on the murder convictions to be served concurrently with each other, as well as for the sentences on the assault convictions to be served concurrently with each other. In total, the actual number of months of confinement ordered was 440 months to life—55 months less than the sentence Ngoeung received in 2019.

According to the 2023 sentence, Ngoeung's sentences for the murder convictions contain a mandatory minimum term of 25 years to life. The confinement time for the assault convictions contains a mandatory minimum of five years pursuant to RCW 9.94A.540(1)(b). However, the record does not reflect that any finding was made, either by the jury or the sentencing court, that the assaults involved force or means likely to produce death, or that Ngoeung or an accomplice intended to kill the victims of the assaults.

*2. Testimony of Dr. Michael Stanfill*

During the 2023 resentencing, Ngoeung presented testimony from Dr. Michael Stanfill, a licensed psychologist. Dr. Stanfill discussed the psychological evaluation that he conducted of Ngoeung in 2023. Dr. Stanfill noted that reports from the time of the crime indicated that Ngoeung did not "really appreciate the consequences of his actions," and was a follower, without a "strong sense of independence or autonomy." Verbatim Rep. of Proc. (VRP) (Apr. 7, 2023) at 45. He discussed Ngoeung's low education level and how, at the time of the crime, he was "impulsive" and "reactionary." *Id.* at 46. According to Dr. Stanfill, Ngoeung's IQ score was in the "low average to below average range" *Id.* at 47. Dr. Stanfill opined that Ngoeung has made noticeable improvements from 2019 to 2023, and did not believe that Ngoeung "is irretrievably depraved and unable to be rehabilitated." *Id.* at 59. Dr. Stanfill believed that Ngoeung's behavior began to shift as a result of the change in his sentence in 2019 away from LWOP. He explained that the change in sentence presented Ngoeung with new goals and opportunities, and he suspected that this would encourage continued compliance on Ngoeung's part.

The court noted that the 1991 psychological evaluation of Ngoeung opined that "psychotherapeutic intervention at that time was going to be necessary to have any hope for healthy adaption for Mr. Ngoeung in society and opined that without such intervention those steps could manifest themselves into a personality disorder." VRP (Apr. 7, 2023) at 60-61. In response to the court's questions, Dr. Stanfill stated that Ngoeung had not received much in terms of psychotherapeutic interventions, but Dr. Stanfill noted that in part, this could be due to a paradigm shift within the field of psychology to focus toward symptom-management intervention, especially in correctional facilities.

During cross-examination, the State noted that a psychologist with the ISRB evaluated Ngoeung's risk of recidivism and found that Ngoeung was at a moderate risk for recidivism. The State also highlighted the fact that Ngoeung was in a fight in 2018, for which he received a serious infraction.

### 3. Discussion of Mitigating Factors of Youth

After Dr. Stanfill's testimony, the court discussed Ngoeung's youthful brain development as well as the challenging circumstances of his life. The court stated, "It is clear that Mr. Ngoeung was subject to a level of adverse childhood experiences that in the history of this court has never been duplicated." *Id.* at 108. The court discussed Ngoeung's family's experience fleeing Cambodia and living in refugee camps, where he was deprived of "positive input to help him form either cognitive levels of achievement or basic social behaviors." *Id.* at 109. The court also discussed Ngoeung's difficulties with learning English and adjusting to life in the States. The court discussed Ngoeung's exposure to violence, recruitment into a gang, and exposure to domestic violence. The court explained that Ngoeung suffered from injuries that potentially created neurological damage and that Ngoeung experienced "social acculturation instability," and educational deficits. *Id.* at 111.

### 4. Discussion of Capacity for Change

The court also discussed Ngoeung's capacity for change. In discussing Ngoeung's disciplinary record, the court noted that Ngoeung was involved in multiple serious infractions, and that "[i]ntensive management was imposed on at least five different occasions" between when he began his prison sentence and 2018. *Id.* at 113.

The court stated that at the time of resentencing, Ngoeung's "record for rehabilitation while incarcerated has only recently improved." *Id.* The court noted that Ngoeung did not have access to programming because the Department of Corrections (DOC) "does not offer a lot of programming and rehabilitation services to people who are not at least approaching release, and for a period of 15 or 20 years, there was no approaching relief for Mr. Ngoeung." *Id.* at 114. Recently, Ngoeung began participating in programming. The court noted that Dr. Stanfill agreed that it would be "appropriate for the public safety to continue Mr. Ngoeung's incarceration at his current level to determine whether this positive trend continues." *Id.*

## ANALYSIS

Ngoeung appeals from the 2023 sentence, arguing that 1) the court erred in including a five-year mandatory minimum sentence with the assault sentences, thereby turning determinate sentences into indeterminate sentences; 2) the court erred in issuing sentences for the assault convictions separately from the murder convictions, rather than ordering "a total sentence under RCW 10.95.030"; 3) the court erred in imposing assault sentences above the bottom of the standard range when it imposed minimum sentences for the murder convictions; 4) the court failed to meaningfully consider Ngoeung's intellectual disability in the context of his capacity for rehabilitation, and; 5) the VPA and DNA collection fees should be stricken. Finally, in Ngoeung's reply brief, he argues that the court erred in imposing the five-year mandatory minimum on the assault convictions, because doing so requires a finding that the "offender used force or means likely to result in death or intended to kill the victim," and no such finding appears in the record. RCW 9.94A.540(1)(b).

The State responds, arguing that 1) the sentences on the assault convictions remain determinate sentences, and the statutory mandatory minimum does not convert them into indeterminate sentences; 2) the court did not abuse its discretion in running the assault sentences consecutively to the murder sentences and in imposing sentences on the assault convictions above the minimum term of the standard range, and; 3) the court meaningfully considered all evidence relating to Ngoeung's potential for rehabilitation. The State concedes that the VPA and DNA collection fees may be stricken. In regard to Ngoeung's argument that the superior court erred in imposing the five-year mandatory minimum on the assault convictions because the required finding does not appear in the record, the State concedes that the superior court erred in imposing the mandatory minimum on the assault convictions and the appropriate remedy is to strike the language in the judgment stating that the mandatory minimum applies to the assault convictions.

We hold first, that the superior court did not err in sentencing Ngoeung's assault convictions under the SRA rather than under former RCW 10.95.030 (2015). Second, we accept the State's concession that the superior court erred by imposing the mandatory minimum term of confinement under RCW 9.94A.540(1)(b), because the required finding (that the "offender used force or means likely to result in death or intended to kill the victim") does not appear in the record. Third, we hold that the superior court did not abuse its discretion in imposing sentences on the assault convictions that were above the bottom of the standard range, as the court meaningfully considered the mitigating factors of youth and Ngoeung's capacity for rehabilitation, and the court adequately explained its reasoning behind the sentence. Finally, we hold that the VPA and DNA collection fees should be stricken. We remand for the sole purpose of striking the notation of the

mandatory minimum terms on the assault convictions from the judgment, and striking the imposition of the VPA and DNA collection fees.

## I. THE SUPERIOR COURT DID NOT ERR IN SENTENCING NGOEUNG'S ASSAULT CONVICTIONS UNDER THE SRA RATHER THAN UNDER FORMER RCW 10.95.030

To the extent Ngoeung's arguments are clear, Ngoeung argues that even though his assault convictions are criminalized under the SRA, "they must be subsumed within the indeterminate sentence the court imposes under RCW 10.95.030." Br. of Appellant at 42. He contends that "[t]he court's minimum term for the assaults is not authorized by any sentencing scheme." *Id.* at 38. Because the ISRB cannot review Ngoeung's determinate sentences related to the assault convictions after the five-year mandatory minimum, Ngoeung argues that he must be "resentenced to a minimum term under RCW 10.95.030 for all offenses." *Id.* at 49. In his reply brief, Ngoeung raises the argument for the first time that the court erred in imposing the mandatory minimum on the assault convictions without the required finding under former RCW 9.94A.540(1)(b) that "the offender used force or means likely to result in death or intended to kill the victim."

The State responds that Ngoeung's citations do not support his argument that "the assault sentences 'must be subsumed within' the murder sentences," Br. of Resp't at 32 (quoting Br. of Appellant at 42). The State disagrees with Ngoeung's argument that the sentence offends *State v. Gilbert*, 193 Wn.2d 169, 438 P.3d 133 (2019). The State concedes that absent the finding necessary for the mandatory minimum to apply, the superior court erred in imposing the five-year mandatory minimum on the assault convictions. The State argues that the appropriate remedy is to remand to strike the language from the judgment referencing the mandatory minimums in regard to the assault convictions.

We hold that the court was correct to sentence Ngoeung's assault convictions under the SRA (chapter 9.94A RCW) rather than under former RCW 10.95.030 (2015), which explicitly deals with sentences for aggravated first degree murder. In regard to the mandatory minimum term imposed on the assault convictions, we agree with the State and remand to the superior court to strike that notation from the judgment.

A. Legal Principles

*1. The SRA*

The SRA outlines mandatory minimum terms of confinement. RCW 9.94A.540. Under the statute, "[a]n offender convicted of the crime of assault in the first degree . . . where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years." RCW 9.94A.540(1)(b).

Under RCW 9.94A.730, an offender convicted of a crime prior to turning 18 years old may petition the ISRB for early release after serving at least 20 years of confinement, "provided the person has not been convicted for any crime committed subsequent to the person's 18th birthday, . . . and the current sentence was not imposed under RCW 10.95.030 or 9.94A.507."[2]

A court "may impose a sentence outside the standard sentence range for an offense if it finds, . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. A departure from the standards within the SRA that determine the imposition of consecutive versus concurrent sentences is an exceptional sentence. RCW 9.94A.535, .589.[3] A

---

[2] RCW 9.94A.730 was amended in 2024. Because these amendments do not impact our analysis, we cite to the current version of the statute. *See* LAWS OF 2024, ch. 118, § 4.

[3] RCW 9.94A.589 was amended in 2020. Because these amendments do not impact our analysis, we cite to the current version. *See* LAWS OF 2020, ch. 276, § 1.

court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1).

*2. RCW 10.95.030*

Chapter 10.95 RCW defines aggravated first degree murder and outlines the sentences for aggravated first degree murder. For our purposes, the most relevant portions of former RCW 10.95.030 (2015) state:

> (3)(a)(ii) Any person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least [16] years old but less than [18] years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than [25] years. . . .
>
> (b) In setting a minimum term, the court must take into account mitigating factors that account for the diminished culpability of youth as provided in *Miller v. Alabama*, 132 S. Ct. 2455 (2012) including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.
>
> . . . .
>
> (d) Any person sentenced pursuant to this subsection shall be subject to community custody under the supervision of the department of corrections and the authority of the indeterminate sentence review board. As part of any sentence under this subsection, the court shall require the person to comply with any conditions imposed by the board.

Subsequent sections within RCW 10.95.030 provide guidelines for procedures and timelines related to ISRB review.

B. Application

*1. The Court Correctly Sentenced Ngoeung's Assault Convictions Under the SRA Rather Than Under RCW 10.95.030*

Ngoeung maintains that all of his convictions should have been sentenced under former RCW 10.95.030. He claims that even though he "was also convicted of assaults, which are

criminalized under the SRA, they must be subsumed within the indeterminate sentence the court imposes under RCW 10.95.030." Br. of Appellant at 42. RCW 10.95.030 is titled "Sentences for aggravated first degree murder." Ngoeung does not point us to any section of chapter 10.95 RCW that supports his position that all of an offender's convictions relating to their murder conviction(s), including related assault convictions, must be subsumed by and sentenced under former RCW 10.95.030.

Ngoeung cites to *Gilbert*, 193 Wn.2d at 175, for support. In *Gilbert*, the supreme court clarified that under *Houston-Sconiers*, "sentencing courts must account for the mitigating qualities of youth and have absolute discretion to consider an exceptional downward sentence in light of such mitigating factors." *Gilbert*, 193 Wn.2d at 175; *State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017). *Houston-Sconiers* held that "sentencing courts possess this discretion to consider downward sentences for juvenile offenders regardless of any sentencing provision to the contrary." *Gilbert*, 193 Wn.2d at 175 (citing *Houston-Sconiers*, 188 Wn.2d at 21). The *Gilbert* court stated that sentencing courts should consider mitigating circumstances as well as "the convictions at issue, the standard sentencing ranges, and any other relevant factors—and should then determine whether to impose an exceptional sentence, taking care to thoroughly explain its reasoning." *Id.* at 176.

Ngoeung is incorrect in his assertion that *Gilbert* requires his assault convictions to be subsumed under former RCW 10.95.030. *Gilbert* does not stand for this proposition, and the citation that Ngoeung provides does not support his argument. *See* Br. of Appellant at 42; *Gilbert*, 193 Wn.2d at 175. The specific citations Ngoeung includes to *Gilbert* merely discuss the discretion of judges to consider exceptional downward sentencing of juveniles in light of mitigating factors.

*Gilbert*, 193 Wn.2d at 175. In Ngoeung's case, the sentencing court took steps to comply with the requirements laid out in *Gilbert*, as we explain below. However, Ngoeung fails to show that *Gilbert* supports his position that the sentences on his assault convictions must be subsumed under former RCW 10.95.030.

With regard to the court's decision not to sentence Ngoeung's assault convictions under former RCW 10.95.030, the court was correct to sentence Ngoeung's assault convictions under chapter 9.94A RCW. The SRA governs sentences for adult felony offenses. RCW 9.94A.505(1) ("When a person is convicted of a felony, the court shall impose punishment as provided in this chapter"); RCW 9.94A.010 ("The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders"); *see also State v. Besio*, 80 Wn. App. 426, 431, 907 P.2d 1220 (1995). Moreover, former RCW 10.95.030, by its plain language, governs the sentencing of the crime of aggravated first degree murder only. Ngoeung points us to no authority either allowing or requiring a trial court to sentence an offender under former RCW 10.95.030 for convictions other than aggravated first degree murder. This court will not consider an argument on appeal if the grounds for that argument are not supported by citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Ngoeung's arguments, unfortunately, are entirely unclear. If he is arguing that whereas assault first degree convictions are normally sentenced under the SRA, if they are being sentenced at the same time as an aggravated first degree murder conviction they must be sentenced under former RCW 10.95.030, he cites no authority for this argument nor is his argument convincing.

15

If Ngoeung is arguing that the imposition of a mandatory minimum term for an assault first degree conviction under RCW 9.94A.540(1)(b) renders the sentence indeterminate and, therefore, unlawful, we decline to reach this argument because it is no longer relevant as we remand to the superior court to strike the mandatory minimum imposed on the assault convictions from the judgment, as discussed below.

2. *The Court Erred in Imposing the Five-Year Mandatory Minimum on the Assault Convictions*

Ngoeung maintains that the court's imposition of a five-year mandatory minimum term on the assault convictions error warrants reversal. Ngoeung argues that "[a]ny additional time the court imposes for the assault convictions will be added to [his] life sentence." Reply Br. of Appellant at 18. During oral argument, he reasoned that a full resentencing was necessary because DOC may be executing the sentence differently than the superior court wanted it to. Appellate counsel makes much of the superior court's unmindful use of the term "mandatory minimum," when in context of the entirety of the court's remarks, relating to the assault convictions, the court stated "mandatory minimum," but was in fact referring to the full sentence imposed on the assault convictions—140 months.

While the oral order and discussion at the superior court was not abundantly clear due to the confusing nature of this area of law, the court intended for the following order of events: first, for Ngoeung to complete the minimum term of confinement for the murder convictions—25 years, which had already been completed at the time of the resentencing. Next, the court intended for Ngoeung's sentences on his assault convictions to begin running upon the completion of the minimum term for the murder convictions (as in, for the sentences on the assault convictions to run consecutively to the sentences for the murder convictions). Then, the court intended for

16

Ngoeung to serve the full term of confinement attached to the assault convictions—140 months. Only after completing both the minimum term of confinement for the murder convictions (25 years) and then the full term of confinement for the assault convictions, did the court then intend for Ngoeung to be eligible for review before the ISRB. The trial court signed a pre-printed judgment and sentence, prepared by the prosecution, which included a pre-checked box within the sentence stating "[ X ] The confinement time on Counts 3 and 4 contains a mandatory minimum term of 5 years." CP at 430.

Ngoeung expressed concern, at oral argument before this court, that instead of following the trial court's orders, DOC could impose the sentence by first running the 25 years to life sentence for the murder convictions, and then, only after the ISRB determines that he is eligible for release under the murder convictions, begin running the 140 months of confinement for the assault convictions. *See* Wash. Ct. of Appeals oral argument, *State v. Ngoeung*, No. 58780-7-II (Dec. 12, 2024) (on file with court).

If Ngoeung were correct and DOC was running the sentence in a manner differently than what the superior court wanted, the court would need the opportunity to recraft his sentence. However, no such opportunity is needed here because DOC is executing Ngoeung's sentence exactly as the superior court intended. Pursuant to RAP 9.11, after oral argument, the State provided the court with Ngoeung's Offender Management Network Information (OMNI) from DOC. According to the OMNI, Ngoeung began serving his sentence for the murder convictions in July 1995. He began serving his sentence under the assault convictions in September 2019, approximately 24 years and 2 months after he began serving the murder conviction sentences. The OMNI confirms that DOC is executing Ngoeung's sentence precisely as the trial court intended,

and appellate counsel's concern that Ngoeung would not begin serving the 140 months for the assault convictions until he was deemed eligible for release under the murder convictions is therefore assuaged.[4]

Under the statute, "An offender convicted of the crime of assault in the first degree . . . where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years." RCW 9.94A.540(1)(b). No such finding exists in Ngoeung's case. We agree with the parties and hold that the superior court erred in imposing the mandatory minimum on the assault convictions absent the necessary finding required under RCW 9.94A.540(1)(b). We agree with the State that the appropriate remedy is to remand to the superior court to strike the notation in the judgment indicating that a five-year mandatory minimum applies to the assault convictions.

## II. THE COURT DID NOT ABUSE ITS DISCRETION IN IMPOSING A SENTENCE OF 140 MONTHS ON NGOEUNG'S ASSAULT CONVICTIONS

Ngoeung argues that the superior court erred in imposing sentences above the minimum terms on his assault convictions when it found that he was entitled to minimum, concurrent sentences for the murder convictions. He maintains that the sentencing court must "impose a single minimum term for all of [his] offenses," because if his "reduced culpability for the aggravated murders entitled him to a minimum term for that conduct, the same must be true for the assault convictions," because his action and culpability was the same. Br. of Appellant at 50-51. He also

---

[4] In the response to the State's filing of the OMNI report, Ngoeung's counsel expressed concern that "DOC's calculations are always subject to review and can change." Appellant's Resp. to the State's Filing of DOC/OMNI Rep. at 3. If DOC changes the way it is executing Ngoeung's sentence in a manner that no longer conforms with the trial court's intentions, then Ngoeung may raise that issue in a personal restraint petition.

claims that the court's consideration for public safety in determining his sentence was invalid "because this is the ISRB's primary and required consideration in releasing him," and while the factors found in former RCW 10.95.030 "are not exclusive, 'public safety' should not be doubly accounted for in the court's imposition of a minimum term for a life sentence, because the minim term is the threshold for consideration for release by the ISRB." *Id.* at 51, 55.

Ngoeung also argues that the sentencing court failed to consider his intellectual disability and the ways in which it inhibits rehabilitation. He claims that the sentencing court failed "to address the mitigating aspects under *Miller* in relation to [his] perceived lack of rehabilitation," and that he must be resentenced to ensure that he is "not punished for lacking the same potential for rehabilitation as a juvenile without his cognitive limitations." *Id.* at 68.

The State responds that the court did not abuse its discretion in imposing a sentence of 36 years of total confinement, a significant downward departure from Ngoeung's previous sentence. In regard to the court's consideration of public safety, the State maintains that "[t]he court has broad discretion in fashioning a sentence," and "[c]ommunity safety is an abundantly appropriate factor for consideration in fashioning any sentence." Br. of Resp't at 36-37. The State contends that the sentencing court meaningfully considered mitigating circumstances and barriers to rehabilitation. We agree with the State.

A. Legal Principles

*1. Standard of Review*

In cases involving the resentencing of juveniles pursuant to RCW 10.95.030, we review for abuse of discretion. *State v. Delbosque*, 195 Wn.2d 106, 116, 456 P.3d 806 (2020); *State v. Rogers*, 17 Wn. App. 2d 466, 479–80, 487 P.3d 177 (2021). "A trial court abuses its discretion

when 'its decision is manifestly unreasonable or based upon untenable grounds.' " *Delbosque*, 195 Wn.2d at 116 (internal quotations omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)). An abuse of discretion exists "only where it could be said no reasonable judge would have taken the view adopted by the trial court." *Rogers*, 17 Wn. App. 2d at 480.

*2. Meaningful Consideration of Mitigating Factors*

In discussing the holding and implications of *Miller*, our supreme court explained that under *Miller*,

> in exercising full discretion in juvenile sentencing, the court must consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." *Miller*, 567 U.S. at 477. It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her]." *Id*. And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated. *Id*.

*Houston-Sconiers*, 188 Wn.2d at 23.

Division One of this court explained in *Rogers* that "when sentencing judges determine that youth is a mitigating factor and exercise their broad discretion to fashion an appropriate sentence, (1) such judges must explain the reasons for their determination and (2) those reasons must be rationally related to evidence adduced at trial or presented at sentencing." *Rogers*, 17 Wn. App. 2d at 480. The court expanded, explaining that "[w]e do not require that sentencing courts explain the calculation leading to the precise length of the sentence imposed. Instead, the court must provide sufficient reasoning to allow for meaningful appellate review as to whether any reasonable judge could make the same decision based on the evidence and information before the sentencing judge." *Id.* at 481.

### 3. Capacity for Rehabilitation

As the *Houston-Sconiers* court noted, in considering the mitigating factors of youth, the sentencing court must also consider "any factors suggesting that the child might be successfully rehabilitated." *Houston-Sconiers*, 188 Wn.2d at 23. *Miller* explained that the goal of rehabilitation does not justify a sentence of LWOP, and a sentence of LWOP "reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change." *Miller*, 567 U.S. at 473 (alteration in original) (quoting *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)).

As the *Delbosque* court explained, *Miller* requires sentencing courts to " 'reorient the sentencing analysis to a forward-looking assessment of the defendant's capacity for change or propensity for incorrigibility, rather than a backward-focused review of the defendant's criminal history.' " *Delbosque*, 195 Wn.2d at 122 (quoting *United States v. Briones*, 929 F.3d 1057, 1066 (9th Cir. 2019)). The sentencing court must ask whether the offender is capable of change. *Id.*

## B. Application

### 1. The Court Meaningfully Considered the Mitigating Factors of Youth

Ngoeung argues that because the court imposed a minimum term sentence for the murder convictions, it must do the same for the assault convictions, given that his culpability was the same. Ngoeung does not point us to any case law that stands for the proposition that because a court applies a minimum term sentence for one conviction, it must do the same for another conviction born out of the same criminal conduct.

In Ngoeung's appeal of his 2019 sentence to this court, we explained that "a sentencing court must *expressly* consider the impact of youth on culpability so that this consideration appears

on the record." *Ngoeung*, slip op. at 18. We held that the 2019 sentencing court in this regard, "failed to thoroughly explain its reasoning on the record." *Id.* at 18. We held that the sentencing court failed to articulate "its reasoning in imposing a sentence seemingly inconsistent with its findings of fact." *Id.* at 22. However, we did not hold that, as Ngoeung suggests, that means that the court *must* impose a minimum sentence on the assault convictions.

The 2023 sentencing court imposed an exceptional downward sentence, by ordering that the sentences on the assault convictions be served concurrently with each other, effectively lowering Ngoeung's sentence from 2019 by 55 months. In contrast to the 2019 sentencing court, the 2023 sentencing court did expressly consider the mitigating factors of youth and the impact on culpability.

The court began by stating "I'm going to try very hard to comply with the Court of Appeals' desire for greater linkage between the so-called attributes of youth and youthful brain development and Mr. Ngoeung's circumstances." VRP (Apr. 7, 2023) at 108. The court explained that "[i]t is clear that Mr. Ngoeung was subject to a level of adverse childhood experiences that in the history of this court has never been duplicated." *Id.* The court noted the trauma Ngoeung experienced at a young age, living in refugee camps where he was deprived of "positive input to help him form either cognitive levels of achievement or basic social behaviors." *Id.* at 109. The court discussed the difficulty Ngoeung had in adjusting to life in the States and learning English, and his exposure to domestic violence and gang violence while he was a child.

The court explained that Ngoeung suffered from injuries that potentially created neurological damage and that Ngoeung experienced "social acculturation instability," and educational deficits. *Id.* at 111. The court stated that Ngoeung "grew up basically with little or no

parental support. He was undereducated. He dropped out of school in the third or fourth grade. He had no opportunity to develop social skills, and his society, such as it was, became the members of his gang." *Id.* "[H]e grew up with violence, and that's what he knew." *Id.* The court noted Ngoeung's susceptibility to peer pressure and tendency to be a follower.

The court explained that Ngoeung's "early environmental circumstances certainly made his subsequent behavior related to this event something that was not acceptable but predictable in a certain respect." *Id.* at 112. The court expressly stated its belief that all of these factors "do result in a lesser degree of culpability based on youth and brain development than would have occurred had these adverse influences not been present in his life, his lack of education and his cognitive delay and his language barriers." *Id.* at 113. The record clearly indicates that the superior court meaningfully considered the mitigating factors of youth and explained these considerations for the record.

### 2. *The Court Meaningfully Considered Ngoeung's Capacity for Rehabilitation*

In Ngoeung's previous appeal to this court, we held that the 2019 resentencing court "failed to meaningfully consider all of Ngoeung's evidence regarding his potential for rehabilitation because it did not address how the evidence related to Ngoeung's capacity to change." *Ngoeung*, slip op. at 18.

A significant portion of the record from the 2023 resentencing hearing is dedicated to testimony from Dr. Stanfill. Dr. Stanfill opined that Ngoeung has made noticeable improvements from 2019 to 2023, and does not believe that Ngoeung "is irretrievably depraved and unable to be rehabilitated." VRP (Apr. 7, 2023) at 59. Dr. Stanfill believes that Ngoeung's behavior began to shift as a result of the change in his sentence in 2019 away from LWOP. He explained that the

change in sentence presented Ngoeung with new goals and opportunities, and he suspected that this would encourage continued compliance on Ngoeung's part.

The court went on to discuss Ngoeung's disciplinary record, and the multiple serious infractions he has incurred during his prison sentence. The court stated that at the time of resentencing, Ngoeung's "record for rehabilitation while incarcerated has only recently improved." *Id.* at 113. The court noted that Ngoeung did not have access to programming because the Department of Corrections "does not offer a lot of programming and rehabilitation services to people who are not at least approaching release, and for a period of 15 or 20 years, there was no approaching relief for Mr. Ngoeung." *Id.* at 114. Recently, Ngoeung began participating in programming. The court noted that Dr. Stanfill agreed that it would be "appropriate for the public safety to continue Mr. Ngoeung's incarceration at his current level to determine whether this positive trend continues." *Id.* The court's discussion illustrates that the court meaningfully grappled with Ngoeung's capacity for change and potential for rehabilitation.

*3. The Court Adequately Explained the Reasoning Behind the Sentence*

In Ngoeung's previous appeal, we held that the 2019 sentencing court "abused its discretion by failing to articulate a full and meaningful consideration of Ngoeung's youth as a mitigating factor during sentencing and by failing to explain its reasoning in imposing a sentence seemingly inconsistent with its findings of fact." *Ngoeung*, slip op. at 21-22. As the *Rogers* court explained, "[w]e do not require that sentencing courts explain the calculation leading to the precise length of the sentence imposed. Instead, the court must provide sufficient reasoning to allow for meaningful appellate review as to whether any reasonable judge could make the same decision

based on the evidence and information before the sentencing judge." *Rogers*, 17 Wn. App. 2d at 481.

Here, the court imposed a significant downward departure—55 months—from the sentence Ngoeung received in 2019. Throughout its oral decision, the court discussed its reasoning behind the sentence. First, the court considered the mitigating circumstances of youth and the adversity Ngoeung faced prior to committing the crimes. Then, the court discussed Ngoeung's capacity for change, noting that Ngoeung's "record for rehabilitation while incarcerated has only recently improved." VRP (Apr. 7, 2023) at 113. The court noted that it would "be more appropriate for the public safety to continue Mr. Ngoeung's incarceration at his current level to determine whether this positive trend continues." *Id.* at 114. The court also stated its obligation "to put rehabilitative capacity ahead of punitive sanctions" in considering Ngoeung's resentencing. *Id.* at 115.

While the superior court did not expressly explain its reasoning for fashioning the sentence the way it did, it was not required to. *Rogers*, 17 Wn. App. 2d at 481. The court adequately provided "sufficient reasoning to allow for meaningful appellate review as to whether any reasonable judge could make the same decision based on the evidence and information before the sentencing judge." *Id.* We hold that the superior court did not abuse its discretion, as it cannot "be said no reasonable judge would have taken the view adopted by the trial court." *Id.* at 480.

Finally, Ngoeung's argument that it was "not valid" for the superior court to consider a concern for public safety in determining his sentence is not persuasive. First, as Ngoeung himself admits, the factors to be considered by the ISRB "are not exclusive." Br. of Appellant at 55. Nowhere in former RCW 10.95.030 does it state that a sentencing court is not permitted to consider public safety in imposing a sentence. One of the enumerated purposes of chapter 9.94A RCW is

to "[p]rotect the public." RCW 9.94A.010(4). The superior court was permitted to consider public safety in determining Ngoeung's sentence.

### III. VICTIM PENALTY ASSESSMENT

Ngoeung argues that the VPA and DNA collection fees should be stricken under RCW 7.68.035 and RCW 10.01.160(3) because he is an indigent defendant. *See* LAWS OF 2023, ch. 449, § 1; LAWS OF 2022, ch. 260, § 9. He argues that because his "case is not yet final, this change in the law applies to him" under *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018) and *State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). *Id.* at 69.

The State concedes that the VPA and DNA fees may be stricken. We accept the State's concession and order that on remand, the trial court is directed to strike the VPA and DNA collection fees.

### CONCLUSION

We hold first, that the superior court did not err in sentencing Ngoeung's assault convictions under the SRA. Second, we hold that the court erred in imposing the mandatory minimum term of confinement on the assault convictions absent a factual finding that Ngoeung and his accomplices "used force or means likely to result in death or intended to kill the victim," per RCW 9.94A.540(1)(b). We hold, however, that a full resentencing is not required and remand this matter to the sentencing court to strike the notation from the judgment and sentence. Third, we hold that the superior court did not abuse its discretion in imposing sentences on the assault convictions above the minimum term, as the court meaningfully considered the mitigating factors of youth and Ngoeung's capacity for rehabilitation, and the court adequately explained it's reasoning behind the sentence. Fourth, we hold that the VPA and DNA collection fees should be

No. 58780-7-II

stricken. We remand solely to strike 1) the language from the sentence referencing mandatory minimums in relation to Ngoeung's assault convictions, and 2) the VPA and DNA collection fees. We affirm the sentence in all other respects.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

PRICE, J.

CHE, J.

27